UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AVIRAL RAI AND SANGEETA RAI,

       Plaintiffs,      Case No.: 09 CIV 9586 (PGG)

  -against-

WB IMICO LEXINGTON FEE, LLC
and GARY BARNETT,

       Defendants.
------------------------------------------------------------x


BRIEF OF DEFENDANTS WB IMICO LEXINGTON FEE,
LLC AND GARY BARNETT IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT, AND IN SUPPORT OF DEFENDANTS'
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>


SCHLAM STONE & DOLAN LLP
26 Broadway -- 19th Floor
New York, New York 10004
Telephone: (212) 344-5400

*Attorneys for Defendants WB Imico Lexington Fee, LLC*
*and Gary Barnett*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii-iii

PRELIMINARY STATEMENT .....................................................................................................1

    A.    Summary of Argument ..............................................................................................1

    B.    This Motion Presents Substantially, But Not Entirely, The Same Issues
        As Certain Other Actions Briefed On The Same Schedule ......................................2

STATEMENT OF THE CASE........................................................................................................3

ARGUMENT...................................................................................................................................5

I.    DEFENDANTS FULLY COMPLIED WITH ILSA.............................................................5

    A.    Defendants' Cross-Motion For Summary Judgment Should Be Granted With
        Respect To Plaintiffs' First Claim Unless Plaintiffs Submit A Sworn Statement
        From Their Real Estate Attorney Denying Receipt Of The Property Report..........6

    B.    Defendants' Cross-Motion for Summary Judgment Should be Granted with
        Respect to Plaintiffs' Second Claim, Which is Based On Asserted Deficiencies in
        the Agreement's ILSA Disclosures ..........................................................................7

        1.    The "Tax Lot" Information Was Not Available At The Time Of The
            Agreement, And The Unit Information Provided Satisfies ILSA................7

        2.    The Agreement's Description Of Plaintiffs' Rights With Respect To Their
            Down-Payment, In The Event ILSA Were Applicable, Is Entirely
            Accurate ........................................................................................................9

        3.    Plaintiffs Are Complaining About Trivial and Immaterial Matters that
            Could Never Justify Equitable Relief.........................................................11

II.    THE 100 LOT EXEMPTION MANDATES A FINDING THAT THE LUCIDA IS NOT
     SUBJECT TO ILSA ...........................................................................................................13

III.   ILSA DOES NOT APPLY TO THE LUCIDA ..................................................................13

IV.   DEFENDANTS' DEMAND FOR ATTORNEYS' FEES SHOULD BE GRANTED.....13

    CONCLUSION..............................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Bodansky v. Fifth on the Park,*
    __ F.Supp.2d __, 2010 WL 334985 (S.D.N.Y. Jan. 29, 2010)..........................................10

*Coosemans Specialties, Inc. v. Gargiulo,*
    485 F.3d 701, 708 (2d Cir. 2007)..........................................................................................13

*Corporacion de Mercadeo Agricola v. Mellon Bank International,*
    608 F.2d 43, 46 (2d Cir. 1979).................................................................................................6

*Fisher v. First Stamford Bank and Trust Co.,*
    751 F. 2d 519, 521 (2d Cir. 1984)...........................................................................................2

*Flint Ridge Development Co. v. Scenic Rivers Association of Oklahoma,*
    426 U.S. 776, 96 S. Ct. 2430 (1976).....................................................................................12

*McGuire v. Russell Miller, Inc.,*
    1 F.3d 1306, 1313 (2d Cir. 1993)..........................................................................................14

*Paramount Lake EOLA, L.P. Litigation,*
    2009 WL 2525558 (M.D. Fla., Aug. 17, 2009) .................................................................8-9

*Plant v. Merrifield Town Center Limited Partnership,*
    __ F.Supp.2d __, 2010 WL 1039875 (E.D. Va. March 18, 2010)......................................12

*Romero v. Borden East River Realty,*
    (E.D.N.Y. Mar. 11, 2010) ......................................................................................................10

*Stein v. Paradigm Mirasol, LLC,*
    586 F.3d 849, 851 (11th Cir. 2009) ........................................................................................4

*Veal v. Geraci,*
    23 F.3d 722, 725 (2d Cir. 1994)..............................................................................................6

## RULES, STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 1701 *et seq.*................................................................................................... *passim*

Interstate Land Sales Full Disclosure Act.................................................................................. 1

Richard Linquanti, *Aspects of the Interstate Land Sales Full Disclosure Act,*
    44 Real Prop. Tr. & Est. L.J. 441, 445 & fn. 12 (2009) ............................................... 4

Restatement (Second) of Agency, § 9(3)..................................................................................... 6

Defendants WB IMICO Lexington Fee, LLC and Gary Barnett ("Defendants" or "WB IMICO") submit this brief in opposition to the motion for partial summary judgment brought by Plaintiffs Aviral and Sangeeta Rai, and in support of Defendants' cross-motion for summary judgment and an award of their attorneys' fees and costs.

## PRELIMINARY STATEMENT

Plaintiffs ask this Court to direct the return of the contractual deposit they paid in connection with their Agreement to purchase a unit in The Lucida, a newly constructed condominium building at 151 East 85th Street, New York, New York. Having made their deal at arms' length and with all relevant and required information at hand, Plaintiffs are struck by "buyer's remorse" after a downturn in the real estate market. For that reason only, they are struggling to devise violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* ("ILSA"), where none exist.

### A.  Summary of Argument

According to Plaintiffs, the Court should brush aside the detailed, seven-hundred-plus-page disclosure they received in the Offering Plan, prepared in conformity with New York's stringent requirements governing such public offerings. Tellingly, Plaintiffs never claim that the offering materials were misleading, or that the condominium unit they contracted to buy failed to comply in any material respect with the description in the Offering Plan they received. Instead, Plaintiffs have come up with two trivial and patently immaterial arguments about WB IMICO's compliance with ILSA -- WB IMICIO did not identify their unit at the time of contracting by its tax lot number (which did not exist at that time and would have been immaterial even if it could have been specified); and their contract did not state, *in haec verba,* the formula used in ILSA to describe the amount that a developer may retain as liquidated damages under ILSA (the greater

of 15% of the purchase price or actual damages) in the event of a purchaser's default, when their contract stated the same information in slightly different language, having no material difference from the ILSA "formula."

Below we show that Plaintiffs' claims are factually baseless and legally meritless. But it also bears notice that this is a case demanding equitable relief, which should never be granted where, as here, the parties demanding it are seeking a grossly inequitable result. In essence, Plaintiffs' argument is that their Agreement was a "heads I win, tails you lose" bet, whereby they could lock in a price in the event the market moved in one direction, but could not be held to the deal if it moved in another -- a proposition that the Second Circuit has noted "will not carry the day in court." *See Fisher v. First Stamford Bank and Trust Co.*, 751 F.2d 519, 521 (2d Cir. 1984) ("One who obtains performance from another while maintaining an option to refuse its own performance obviously views the bargain as a 'heads I win, tails you lose' bet. Arguments supporting that inequitable supposition contravene the 'policy of preventing people from getting other people's property for nothing when they purport to be buying it,' [citation omitted] and will not carry the day in court.").

**B.    This Motion Presents Substantially, But Not Entirely, The Same Issues As Certain Other Actions Briefed On The Same Schedule**

Pursuant to this Court's order entered January 22, 2010, a materially-similar joint motion has been brought, on the same schedule as this motion, in the following cases also before this Court, in each case against Defendant WB IMICO: Haskell Limited, Inc. (09 CIV 9609), Jessica Benhamou (09 CIV 9610), Garret Bauer (09 CIV 9611) and Marilyn H. Ezzes (09 CIV 9612) (the "Related Actions").

Unlike Plaintiffs in the Related Actions, Plaintiffs here attempt to dispute whether they received a property report before signing their Agreement. Pl. Br. at 3; Amended Complaint at

2

¶¶ 24, 52-53. It is not clear if Plaintiffs deny that the transmission to their counsel happened, or contend that it was somehow deficient under ILSA. They have not included any facts about their non-receipt of the property report in their statement pursuant to local rule 56.1, and have not moved on their first claim. (Plaintiffs thus move for *partial* summary judgment, while seeking full relief: the relief on their first and second claims is identical, but summary judgment on their first claim would require a factual finding that they did not receive a property report.)

Defendants have produced a sworn statement demonstrating its transmission of the property report to Plaintiffs' counsel prior to the Agreement, with directions that he forward it to his clients (*see* Declaration of Caroline Berman, dated April 7, 2010 ("Berman Dec."), and has denied Plaintiffs' allegation that they did not receive a property report. Answer at ¶¶ 24, 52-53.

The question of whether or not Plaintiffs received the property report is not material to Points II and III of Defendants' cross-motion, which show that ILSA does not apply to The Lucida. It may have some application with respect to Point 1 of Defendants' cross motion, as we discuss under that heading.

For the reasons explained below, this Court should reject Plaintiffs' arguments and should direct the entry of summary judgment in Defendants' favor dismissing the complaint.

## STATEMENT OF THE CASE

The facts entitling Defendants to summary judgment are not in dispute. Plaintiffs signed an Agreement (the "Agreement"), pursuant to which WB IMICO was entitled to retain their 15% down-payment if they failed to close on their Unit after due notice from WB IMICO. Plaintiffs' Rule 56.1 Statement ("Pl. 56.1 Stmt.") at ¶ 16 & Exh. C (the down-payment provision is at ¶ 15). Plaintiffs refused to close after receiving the required notice of a closing date from WB IMICIO;

3

the time to close has long passed. Declaration of Raizy Haas, dated April 8, 2010 ("Haas Dec.") at ¶ 7 & Exhs. E.

Plaintiffs assert two claims. The first seeks to enforce Plaintiffs' claimed right, under § 1703(c), to revoke their Agreement and recover their down payment due to WB IMICIOs' asserted failure to provide a property report. The second claim seeks to revoke their Agreement and recover their down payment under § 1703(d)(1), based on two asserted deficiencies in WB IMICIO's ILSA disclosures in the Agreement: (i) that it did not include the tax lot number for their unit, Plaintiffs' Memorandum of Law, dated March 5, 2010 ("Pl. Br.") at 8-10; and (ii) that it failed to disclose adequately the purchaser's rights under § 1703(d)(1) of ILSA, because it states that WB IMICIO *will refund all but 15%* of the purchase price as the down-payment, rather than stating that it will *retain no more than 15%* of the purchase price as the down-payment, in the event ILSA applies and there is a non-excused default by the purchaser. Pl. Br. at 10-12.

Plaintiffs do not claim to have been injured by WB IMICIOs' "failure" to provide tax lot information (which was not yet available) at the time of contract, or from the entirely accurate statement in their Agreement of the rescission rights Plaintiffs would have if ILSA were to apply. Despite the lack of any injury, the reason Plaintiffs filed this lawsuit is not difficult to discern: it is found the established "correlation between periods of real estate bust and the number of ILSA cases." Richard Linquanti, *Aspects of the Interstate Land Sales Full Disclosure Act,* 44 Real Prop. Tr. & Est. L.J. 441, 445 & fn. 12 (2009) (collecting data and citing economic study). Having bought at or near the top of the market, Plaintiffs hope to find in ILSA's recessionary remedies a way to avoid living with bargains they have come to regret. *See Stein v. Paradigm*

4

*Mirasol, LLC,* 586 F.3d 849, 851 (11th Cir. 2009) (describing ILSA as "a federal statute that has become an increasingly popular means of channeling buyer's remorse into a legal defense ....")

In Point I, we show that the Defendants fully complied with ILSA. Moreover, in Point II, we show that ILSA provides an exemption from its disclosure requirements for developments at which fewer than one hundred non-exempt units are sold (the "100 Lot Exemption"). The Lucida qualifies for that exemption because WB IMICIO has only 98 units for sale at the Lucida (as several of the 110 units initially contemplated for sale were combined). ILSA allows a developer to elect to proceed under the 100 Lot Exemption at any time until the 100th non-exempt unit is sold, an event which has not happened and cannot now ever happen.

Finally, as we show at Point III, ILSA is not properly applied to The Lucida at all, because that statute is neither intended for, nor suitable to, urban high-rise condominiums.

## ARGUMENT

Plaintiffs' efforts to avoid their contractual obligations by invoking ILSA fail for three independently-sufficient reasons. As we show at Point I, WB IMICO fully complied with ILSA's disclosure requirements. As we show at Point II, if ILSA were found to apply, The Lucida would qualify for the 100 Lot Exemption. Finally, as we show at Point III, ILSA does not properly apply to condominium developments like The Lucida.

Plaintiffs have offered, and can offer, no other basis to dispute WB IMICO's right, clearly spelled out in the Agreement, to retain Plaintiffs' down payment (¶ 15.2) and to recover its costs and attorneys' fees (¶ 32) in the wake of Plaintiffs' uncured default. Therefore, Plaintiffs' motion for partial summary judgment should be denied, and Defendants' cross-motion should be granted.

## I. DEFENDANTS FULLY COMPLIED WITH ILSA

As noted in the Preliminary Statement at Point B, Plaintiffs' first claim depends upon the assertion that they did not receive a property report. Plaintiffs have not moved on this claim, but Defendants have cross-moved on both the first and second claims.

As set forth at Point I(A), Plaintiffs must submit a sworn denial of receipt by their real estate attorney to create an issue of fact with respect to their receipt of the property report; failing that, the first claim should be dismissed even if ILSA applies. As set forth at Point I(B), the objections to WB IMICO's ILSA disclosures in the Agreement that underlie Plaintiffs' second claim are frivolous so the second claim, also, should be dismissed even if ILSA applies.

### A. Defendants' Cross-Motion For Summary Judgment Should Be Granted With Respect To Plaintiffs' First Claim Unless Plaintiffs Submit A Sworn Statement From Their Real Estate Attorney Denying Receipt Of The Property Report

Plaintiffs' first claim is based on WV IMICO's asserted failure to provide a property report. Defendants have submitted a sworn statement that the property report was mailed to Plaintiffs' counsel, John Lewin, Esq., pre-contract, with instructions that he forward it to them. *See* Berman Dec.; *see also* Exh. B to appendix to Plaintiffs' R. 56.1 Stmt.

Unless Plaintiffs' submit a sworn denial of receipt from Mr. Lewin, there is no issue of fact in this regard and Plaintiffs' first claim must be dismissed. *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) ("A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it, under circumstances coming within the rules applying to the liability of a principal because of notice to his agent", *quoting* Restatement (Second) of Agency, § 9(3)); *Corporacion de Mercadeo Agricola v. Mellon Bank Intern.*, 608 F.2d 43, 46 (2d Cir. 1979) ("Notice to the agent, however, is notice to the principal,

6

unless the person giving notice has reason to know that the agent has no duty to or will not transmit the message to the principal.")

### B. Defendants' Cross-Motion for Summary Judgment Should be Granted with Respect to Plaintiffs' Second Claim, Which is Based On Asserted Deficiencies in the Agreement's ILSA Disclosures

Plaintiffs' claims that the Agreement failed to comply with ILSA's disclosure requirements do not withstand scrutiny. The undisputed facts establish the contrary.

#### 1. The "Tax Lot" Information Was Not Available At The Time Of The Agreement, And The Unit Information Provided Satisfies ILSA

Plaintiffs complain that the "Agreement does not identify Plaintiff's Unit in a form acceptable for recording" by providing the tax lot number, and that the Offering Plan does not cure this because it also does not provide the tax lot number for each unit. Pl. Br. at 9-10. When Plaintiffs signed their Agreement, their unit's tax lot number was not yet determined. And Plaintiffs' contention that the Unit's tax lot number "was known or readily obtainable by Defendant at the time the Agreement was executed", Pl. Br. at 10, is clearly mistaken.

In New York City, tax lot numbers for individual condominium units cannot issue until the condominium declaration and the tax lot drawing creating the condominium are recorded with the New York City Department of Finance ("NYCDOF"). Declaration of Michel Evanusa ("Evanusa Dec."), dated March 25, 2010, ¶ 5 (annexed as Exhibit I to the Declaration of Richard Dolan, dated April 8, 2010 (the "Dolan Rai Dec.") In the case of The Lucida, tax lot numbers did not become available until 2009, Evanusa Dec., ¶ 10, well after Plaintiffs had signed their Agreement. In the Offering Plan[1], each of the residential units in The Lucida was identified by unit number, and the Offering Plan included a corresponding floor plan and deed approved by the New York State Department of Law and the NYCDOF. Evanusa Dec., ¶¶ 3-5. Plaintiffs

---

[1] It is undisputed that Defendant provided the Offering Plan to Plaintiffs. Pl. 56.1 Stmt. at ¶¶ 13-14.

7

plainly knew which unit they were purchasing and where in the unbuilt condominium it would be located and their Agreement clearly identified the unit being sold. Pl. R. 56.1 Stmt., ¶ 16 & Exh. C.

WB IMICO provided the tax lot information for The Lucida as a whole, at pp. vi and 250 of the Offering Plan and at p. 2 of the Property Report.[2] *See* Haas Dec., ¶¶ 3(a), 4 & Exhs. B & C. WB IMICIO also specifically advised all buyers, in two different portions of the Property Report as approved by the United States Department of Housing and Urban Development ("HUD"), Evanusa Dec., ¶ 3, that tax lot information for individual units was not yet available. Haas Dec., Exh. C at p. 13 (disclosure in bold, boxed and capitalized type) and at p. 30 (appearing under the "Listing of Tower Units".) The disclosure at p. 13 provides, in relevant part:

> **NEITHER THE FLOOR PLANS NOR THE DECLARATION HAVE BEEN SUBMITTED TO THE RPAB [Real Property Assessment Bureau of the City of New York.] UNTIL THE FLOOR PLANS ARE FILED AND THE DECLARATION IS RECORDED, THE DESCRIPTION OF THE UNITS IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE TOWER UNITS. THEREAFTER, EACH TOWER UNIT WILL BE LEGALLY DESCRIBED BY REFERENCE TO ITS UNIT AND TAX LOT NUMBER AS SET FORTH IN THE RECORDED DECLARATION AND FILED FLOOR PLANS.**

Plaintiffs' argument that ILSA required tax lot information for each unit at a time when it was not even available in the ordinary course merely underscores the fact, argued within at Point III, that ILSA is not intended for or suitable to urban high rise condominiums.

---

[2] We refer to the Property Report in this section in the event Plaintiffs fail to submit a sworn statement from their real estate attorney denying receipt of it. *See* Point I(A). If they submit such a statement, we rely only on the disclosures in the Agreement and Offering Plan, which are in any case sufficient to support Defendants' cross-motion, for the reasons set forth in the text.

8

Unsurprisingly, Plaintiffs cite no case holding that rescission is available under ILSA for "failure" to provide tax lot information for specific units at the time of contract. In *Paramount Lake EOLA, L.P. Litigation,* 2009 WL 2525558 at *16 (M.D. Fla., Aug. 17, 2009), the court found a similar argument -- that a failure to list "'the Lot, Block and Section' describing the Unit" made ILSA disclosures defective -- to be "completely without merit." The court recognized that, "[o]bviously, a condominium building is not a typical subdivision, the parts of which can be described with a lot, block and section. . . . [B]y filling in the Unit number, Defendant filled in the lot number, and the block and section do not apply."

### 2. The Agreement's Description Of Plaintiffs' Rights With Respect To Their Down-Payment, In The Event ILSA Were Applicable, Is Entirely Accurate

WB IMICIO made the disclosures required by ILSA twice in each Agreement: ¶ 15.2, and ¶ 43. Pl. 56.1 Stmt., ¶ 16 & Exh. C. Without citation to any supporting case law, Plaintiffs assert three purported ILSA deficiencies in these disclosures, none of which survives review.

**First,** because the Agreement provides certain remedies only "if and only to the extent that the sale of the Unit is not exempt from the provisions of" ILSA, Plaintiffs argue that "the Agreements fail to provide affirmatively that Defendant shall refund any portion of Plaintiffs' Deposit and fails to limit Plaintiffs' liability for default to the greater of 15% of the purchase price or Defendant's actual damages." Pl. Br. at 11.

This is premised on the notion that, because the application of ILSA was uncertain, the Agreements failed to make clear that WB IMICIO would not retain Plaintiffs' deposits beyond the greater of 15% of the purchase price or WB IMICIO's actual damages as required by § 1703(d)(3). This premise is mistaken because:

- it is undisputed that each Plaintiff paid only 15% as a deposit (Pl. 56.1 Stmt., ¶ 17);

9

- the Agreement provides, at ¶ 15.2 -- *before* it reaches its ILSA disclosure -- that, in the event of default, Defendant may retain only the amount paid by Plaintiffs.

Plaintiffs' rights would therefore be the same whether or not ILSA applied: without ILSA, WB IMICO would retain only 15% (because that was all that was paid), and with ILSA WB IMICO would retain only 15% (per § 1703(d)(3)).

The Agreement identified Plaintiffs' rights in the down-payments accurately. While the application *vel non* of ILSA was an open question (even though that question made no material difference with respect to Plaintiffs' rights in the down-payment), this was entirely appropriate. As discussed at Point II, under the plain language of ILSA, a developer may exercise its right to proceed under the 100 Lot Exemption (for example) at any time until the 100th non-exempt lot has sold. *See Bodansky v. Fifth on the Park*, __ F.Supp.2d __, 2010 WL 334985 at *5 (S.D.N.Y. Jan. 29, 2010); *Romero v. Borden East River Realty*, (E.D.N.Y. Mar. 11, 2010). (As set forth at ¶ 11 of the Dolan Rai Dec., a copy of the decision in *Romero* is annexed at Exhibit H to the Declaration of Richard Dolan in the Related Actions.)

**Second,** Plaintiffs object that Defendants' ILSA disclosures are deficient because the Agreement fails to set forth "the statutory algorithm [appearing at 15 U.S.C. § 1703(d)(3)] of the amount that remains after subtracting: (a) 15% of the purchase price (excluding any interest owed) or WB IMICIO's damages, whichever is greater, from (b) the amount paid by purchaser with respect to the purchase price (excluding any interest owed.)" Pl. Br. at 11.

The Agreement states (at ¶ 15.2, quoted in Pl. Br., p. 11) that, under ILSA:

> The amount of the Deposit to be retained by Sponsor upon Purchaser's failure to cure a default after the expiration of the thirty (30) day notice and opportunity to cure period will be the greater of (i) fifteen percent (15%) of the Purchase Price (excluding any interest owed) or (ii) the amount of damages incurred by seller due to the default.

10

Plaintiffs do not contend that the Agreement's disclosures are substantively different from the "statutory algorithm" of ILSA. Nor do they cite any case holding that ILSA is violated, or rescission available, where a purchaser's statutory rights are accurately described without tracking ILSA's language word-for-word. In substance, Plaintiffs' argument makes sense only if there is a material difference between "will retain no more than" and "will refund all but." Yet Plaintiffs do not even attempt the logical gymnastics that would be required to make that argument. In any event, the precise "statutory algorithm" appears at p. 10 of the Property Report (Haas Dec., Exh. C at p. 10), rendering Plaintiffs' objections frivolous.

**Third,** Plaintiffs argue that the Agreement "impermissibly expands Plaintiffs' liability for default beyond the limit of liability established" in § 1703(d)(3) because it:

> obligates Plaintiff to reimburse Defendant "for any legal fees and disbursements incurred by [Defendant] in defending [Defendant]'s rights under this Agreement or, in the event Purchaser defaults under this Agreement beyond any applicable grace period, in defending [Defendant]'s rights under this Agreement or in cancelling this Agreement or otherwise enforcing Purchaser's obligations hereunder."

Pl. Br. at 11-12. Here, again, Plaintiffs offer no authority to support their argument that this 'fee shifting' provision violates ILSA or justifies rescission. Notably, § 1703(d)(3) speaks only to the amount of funds paid by purchaser that seller must refund; it is not a general cap on purchaser's liability. The Agreement addresses the ILSA refund issue fully and accurately, as demonstrated above. The attorneys' fee provision of ¶ 32 says nothing about the amounts that seller must or will refund under ILSA, and in fact the attorneys' fee provision has nothing whatever to do with Plaintiffs' down-payment or their rights under ILSA.

11

### 3. Plaintiffs Are Complaining About Trivial and Immaterial Matters that Could Never Justify Equitable Relief

Even if Plaintiffs were correct in their hyper-technical reading of ILSA's requirements, the fact remains that Plaintiffs' second claim complains about trivial and immaterial matters that could not possibly warrant the drastic equitable remedy of rescission.

In *Plant v. Merrifield Town Center Limited Partnership*, __ F.Supp.2d __, 2010 WL 1039875 (E.D. Va. Mar. 18, 2010), the Court considered the showing that a plaintiff must make to obtain equitable relief under § 1703(d), the section under which Plaintiffs' second claim supposedly arises. The Court looked to Supreme Court decisions under the analogous provisions of the Securities Act of 1933 and ERISA, *id.* at *9-10, and concluded that equitable relief under ILSA was appropriate only if a plaintiff "prove[d]: (i) that [ILSA] violations occurred; (ii) that these violations were material, or in other words, that they would have influenced a reasonable purchaser's decision to enter into the contract for sale; and (iii) either that rescission would restore the parties to the *status quo ante* or that the equities of the situation demanded rescission." *Id.* at *10. Because ILSA "is based on the full disclosure provisions and philosophy of the Securities Act of 1933 . . . which it resembles in many respects," *Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 778, 96 S. Ct. 2430, 2433-34 (1976), the *Plant* court's approach implements Congress's intent in adopting ILSA's statutory scheme.

Here, Plaintiffs make no claim that the tax lot information was objectively material, or would have led a reasonable buyer not to sign the contract. Plaintiffs could plainly see that the tax lot information was not provided in the Agreement (even if the Property Report's express notice of this is not considered), yet that fact did not cause them to decline to enter into the purchase Agreement. Similarly, Plaintiffs' complaint about the description of their rights with respect to the down-payment are objectively immaterial because (a) the Property Report quoted

12

the precise ILSA 'formula' that Plaintiffs say should have been used; and (b) the description of Plaintiffs' rights in the down-payment set forth in their Agreement and in the form Agreement annexed to the Offering Plan was substantively identical to ILSA's formula.

## II. THE 100 LOT EXEMPTION MANDATES A FINDING THAT THE LUCIDA IS NOT SUBJECT TO ILSA

Even if Plaintiffs' claims of ILSA non-compliance had merit (which they do not), their complaint must still be dismissed. The Lucida qualifies for the 100 Lot Exemption because fewer than 100 non-exempt units have been or can be sold there.

Rather than repeating their briefing on this point, Defendants respectfully refer to the Court to Point II of Defendants' memorandum of law in the Related Actions, dated April 8, 2010.

## III. ILSA DOES NOT APPLY TO THE LUCIDA

The Court should hold that units in a high-rise urban condominium subject to the extensive regulatory scheme of New York's Martin Act are not "lots" within the meaning of ILSA.

Rather than repeating their briefing on this point, Defendants respectfully refer to the Court to Point III of Defendants' memorandum of law in the Related Actions, dated April 8, 2010.

## IV. DEFENDANTS' DEMAND FOR ATTORNEYS' FEES SHOULD BE GRANTED

Plaintiffs' Agreement provides, at ¶ 32, that:

> Purchaser [Plaintiff] shall be obligated to reimburse Sponsor [Defendant] for any legal fees and disbursements incurred by Sponsor in defending Sponsor's rights under this Agreement or, in the event Purchaser defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing Purchaser's obligations hereunder.

Pl. 56.1 Stmt., ¶ 16 & Exh. C.

Contractual fee shifting clauses are enforceable. *See, e.g., Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007). Plaintiffs, by bringing these meritless suits, have forced Defendants to incur legal fees and disbursements in "enforcing Purchaser's obligations" under each Agreement. Consistent with the two-step procedure endorsed in *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993), the amount of the costs and fees to which Defendants are entitled can be determined by the Court in subsequent proceedings. The Court should grant Defendants summary judgment as to Plaintiffs' liability under ¶ 32 of the Agreements and proceed thereafter with *McGuire's* second step by taking proof of the amounts to which Defendants are entitled.

## CONCLUSION

Defendants WB IMICO Lexington Fee, LLC and Gary Barnett request that Plaintiffs' motion for summary judgment be denied and that Defendants' cross-motion for summary judgment be granted. Defendants further request that the Court grant them judgment on the issue of Plaintiffs' liability for Defendants' costs, including attorneys' fees, and then schedule such further proceedings as are necessary to fix the amount to which Defendants are entitled.

Dated: April 8, 2010
     New York, New York

                                            Respectfully submitted,
                                            **SCHLAM STONE & DOLAN LLP**

By: _____
                                            Richard H. Dolan (RD 2212)
                                            Thomas A. Kissane (TK 8221)
                                            26 Broadway
                                            New York, New York 10004
                                            (212) 344-5400

                                            *Attorneys for Defendant*
                                            *WB IMICO LEXINGTON FEE, LLC*