UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

AVIRAL RAI AND SANGEETA RAI,

          Plaintiffs,

v.

WB IMICO LEXINGTON FEE, LLC and
GARY BARNETT,

          Defendants.

Civ. No.: 09-CV-9586 (PGG)

-------------------------------------------------------X

---

## PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

---

WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Woodbridge, NJ 07095
732-636-8000
Attorneys for Plaintiffs

LAWRENCE C. WEINER
   Of Counsel & On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL ARGUMENT .............................................................................................................2

POINT I.................................................................................................................................2

    MERELY PROVIDING A PROPERTY REPORT TO A PURCHASER'S
    ATTORNEY DOES NOT MEET THE REQUIREMENTS OF ILSA ..............................2

        A.      ILSA Defines "Purchaser" Narrowly ...........................................................3

        B.      ILSA Requires Developers to Produce a Receipt Signed By
              the Actual Purchaser to Prove it Provided the Purchaser
              With a HUD Property Report ....................................................................7

        C.      WB IMICO Violated 24 C.F.R. § 1715.20...................................................9

        D.      Allowing a Developer to Provide a HUD Property Report
              to a Purchaser's Attorney Eviscerates the Purpose and
              Intent of ILSA.........................................................................................9

POINT II...............................................................................................................................11

    WB IMICO'S FAILURE TO PROVIDE PURCHASERS WITH A HUD
    PROPERTY REPORT IS FATAL...................................................................................11

CONCLUSION ......................................................................................................................14

#3278910 (153978.001)

# TABLE OF AUTHORITIES

PAGE

## CASES

200 East Partners, LLC v. Gold,
  997 So.2d 466 (Fla. App. Div. 4th Dist. 2008), rehearing denied (January 23, 2009) ..............13

Ahn v. Merrifield Town Center Limited Partnership,
  584 F. Supp.2d 848 (E.D. Vir. 2008) ....................................................................................10

Bugarin v. Chartone,
  38 Cal. Rptr. 3d 505 (2006)........................................................................................................6

Burns v. Duplin Land Development, Inc.,
  7:07-CV-172-D, 2009 U.S. Dist. LEXIS 25278  (E.D.N.C. Mar 27, 2009) .............................12

Cordiano v. Metacon Gun Club, Inc.,
  575 F.3d 199 (2d Cir. 2008)........................................................................................................7

Dorchester Development, Inc. v. Burk,
  439 F.2d 1033 (Fla. 3d DCA 1983) ...........................................................................................9

Estate of Pew v. Cardarelli,
  527 F.3d 25 (2d Cir. 2008).........................................................................................................7

Gaudet v. Woodlake Development Co.,
  399 F. Supp. 1005 (E.D. La. 1975) ..........................................................................................13

Jacobs v. New York Foundling Hosp.,
  577 F.3d 93 (2d Cir. 2009).........................................................................................................7

Law v. Royal Palm Beach Colony, Inc.,
  570 F.2d 98 (5th Cir. 1978)........................................................................................................3

Lee v. Bankers Trust Co.,
  166 F.3d 540 (2d Cir. 1999).......................................................................................................7

Life Receivables Trust v. Syndicate 102 at Lloyd's of London,
  549 F.3d 210 (2d. Cir. 2008)......................................................................................................4

Pugliese v. Pukka Dev., Inc.,
  550 F.3d 1299 (11th Cir. 2008)..................................................................................................4

Rockefeller v. High Sky, Inc.,
  394 F. Supp. 303 (E.D. Penn. 1975) .............................................................................11, 12, 13

#3278910 (153978.001)

Schatz v. Jockey Club Phase III Ltd.,
   604 F. Supp. 537 (S.D. Fla. 1985)................................................................................10

Webb v. Smart Document Solutions, LLC,
   499 F.3d 1078 (9th Cir. 2007)..................................................................................5

**STATUTES**

15 U.S.C. § 1701 .................................................................................................1, 5

15 U.S.C. § 1701(10)..........................................................................................4

15 U.S.C. § 1703 ................................................................................................4

15 U.S.C. § 1703(c) ...........................................................................................1

15 U.S.C. § 1703(d)...........................................................................................1

**OTHER AUTHORITIES**

24 C.F.R. § 1710.105.........................................................................................10

24 C.F.R. § 1710.118.........................................................................................7

24 C.F.R. § 1710.118(b).....................................................................................8

24 C.F.R. § 1715.20...........................................................................................9

45 C.F.R. § 160.103...........................................................................................5

45 C.F.R. § 164.524(a)(1)...................................................................................5

45 C.F.R. § 164.524(c)(4)...................................................................................5

Conf. Rep. 90-1785 (1986),
   as reprinted in, 1968 U.S.C.C.A.N. 3053.............................................................11

#3278910 (153978.001)

# PRELIMINARY STATEMENT

Plaintiffs, Aviral Rai's and Sangeeta Rai's ("Plaintiffs" or "Purchasers") Amended Complaint seeks to enforce their automatic right to rescind their purchase agreement under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq. ("ILSA") based upon defendant, WB IMICO Lexington Fee, LLC's ("WB IMICO") violation of both 15 U.S.C. § 1703(c) and (d). Purchasers moved for partial summary judgment as to their § 1703(d) claims only, and in conjunction with plaintiffs, Haskell Limited Inc., Jessica Benhamou, Garrett Bower and Marilyn Ezzes (the "Other Plaintiffs"). In fact, Purchasers and the Other Plaintiffs submitted virtually identical briefs in support of their separate motions for summary judgment (Purchasers' motion being for partial summary judgment) based upon WB IMICO's violation of 15 U.S.C. § 1703(d).

WB IMICO has now cross-moved for summary judgment to, inter alia, dismiss Purchasers' claim that WB IMICO violated 15 U.S.C. § 1703(c), Count I of Plaintiffs' Amended Complaint. This brief opposes such motion.

For the sake of brevity and so as not to burden the Court with repetitive argument, Purchasers adopt and incorporate by reference the brief submitted on behalf of the Other Purchasers in reply to WB IMICO's opposition to Purchasers' and the Other Plaintiffs' motion relating to WB IMICO's violation of § 1703(d) and its cross-motion on the same issue.

-1-

**LEGAL ARGUMENT**

**POINT I**

**MERELY PROVIDING A PROPERTY REPORT TO A PURCHASER'S ATTORNEY DOES NOT MEET THE REQUIREMENTS OF ILSA**

WB IMICO's sole argument in support of its motion to dismiss Count I of Purchasers' Amended Complaint is that since it provided Purchasers' attorney with a copy of a HUD Property Report (hidden underneath several other documents), it has met its obligation and requirement under ILSA. The relevant sections of ILSA, however, clearly and unambiguously show that the HUD Property Report must be provided to the actual purchaser, not his agent or attorney. Not only must the HUD Property Report be provided directly to the actual purchaser, the purchaser must sign a receipt acknowledging that he or she received the HUD Property Report and the developer is required to maintain this receipt for three years. By its own terms, ILSA dictates that the HUD Property Report must be given to the actual purchaser, who must sign a receipt to verify that he or she undisputedly received the HUD Property Report.

Moreover, ILSA's regulations explicitly prohibits a developer from providing the HUD Property Report along with other documents in a manner to conceal the HUD Property Report. So even if ILSA allowed the HUD Property Report to be given to a purchaser's attorney – as opposed to the purchaser directly – the manner in which WB IMICO provided the HUD Property Report to Purchasers' attorney violated ILSA in and of itself.

It is apparent that the reason why a HUD Property Report must be given to the actual purchaser and that the purchaser must sign a receipt to be maintained by developer for three years is to remain consistent with the purpose and intent of ILSA, "which is to ensure that a buyer, prior to purchasing certain kinds of real estate, is informed of facts which will enable him

-2-

to make an informed decision about purchasing the property." <u>Law v. Royal Palm Beach</u> <u>Colony, Inc.</u>, 570 F.2d 98, 99 (5th Cir. 1978). If a developer can simply give the HUD Property Report to an attorney, a purchaser may very well not obtain the federally mandated written disclosures and consider same <u>before</u> he signs a purchase agreement, a scenario ILSA is designed to prevent.

### A.  ILSA Defines "Purchaser" Narrowly

The pertinent sections of ILSA are set forth below.

15 1703 provides in pertinent part:

> (a) Prohibited activities
>
> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—
>
> (1)     with respect to the sale or lease of any lot not exempt under section 1702 of this title—
>
> \*     \*     \*
>
> (B)     to sell or lease any lot unless a **printed property report**, meeting the requirements of section 1707 of this title, **has been** <u>**furnished to the purchaser**</u> **or lessee in advance of the signing of any contract** or agreement by such purchaser or lessee;
>
> \*     \*     \*
>
> (c)  Revocation of contract or agreement at option of purchaser or lessee where required property report not supplied.  In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter <u>**and the property**</u> <u>**report has not been given to the purchaser**</u> **or lessee in advance** **of his or her signing such contract** or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.

(Emphasis added)

ILSA defines "purchaser" to mean "an actual or potential purchaser or lessee of any lot in a subdivision [.]"[1] See 15 U.S.C. § 1701(10). The definition of purchaser under ILSA does not include the phrases "or his agent" and/or "or his attorney." "Courts must interpret a statute as it is, not as it might be, since courts must presume that a legislature says in a statute what it means and means in a statute what it says." Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 216 (2d. Cir. 2008) (citation omitted). WB IMICO self-servedly asks this Court to rewrite the statute to include in the definition of "purchaser" the terms "or his agent" and/or "or his attorney." This position runs afoul of the principle of statutory construction which forbids adding supposedly clarifying language where it does not exist and could have been provided in the first place. See e.g., Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1304 (11th Cir. 2008). Indeed, if Congress intended for a developer to meet its requirement to provide a purchaser with a property report by providing same to purchaser's attorney, it would have included such language in the definition of "purchaser" and/or written this ability into the relevant sections of § 1703.

Significantly, ILSA expanded the definition of "developer" by specifically defining "agent" to mean:

---

[1] Similarly, the parties' purchase agreement defines plaintiffs as the "purchaser." Plaintiffs' Purchase Agreement states "Aviral Rai and Sangeeta Rai, having an address at 62 West 62nd Street, New York, New York 10023 ("Purchaser")." The Purchase Agreement also states:

IF YOU DID NOT RECEIVE A PROPERTY REPORT PREPARED PURSUANT TO THE REGULATIONS OF THE OFFICE OF INTERSTATE LAND SALES REGULATIONS, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, IN ADVANCE OF YOUR SIGNING THE CONTRACT OR AGREEMENT, THE CONTRACT OR AGREEMENT MAY BE CANCELLED AT YOUR OPTION FOR TWO YEARS FROM THE DATE OF SIGNING.

(A copy of Plaintiffs' Purchase Agreement is annexed as Exhibit C to Plaintiffs' Appendix to their Statement of Undisputed Material Facts (the "Appendix"). (Emphasis added)

#3278910 (153978.001)

any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person[2] consists solely of rendering legal services.

There is no parallel expansion of the definition of purchaser. Further, the term "agent" explicitly excludes purchaser's attorney from its definition. Consequently, the plain language of ILSA requires that the HUD Property Report be given directly to purchaser, not his agent or attorney.

Instructive on this issue is the Ninth Circuit's decision in <u>Webb v. Smart Document Solutions, LLC</u>, 499 F.3d 1078 (9th Cir. 2007), which held that even though an attorney is a client's agent, where a statute defines a term to limit it to the client, the definition does not apply to the client's attorney. The court in <u>Webb</u> considered whether the term "individual" as used in the regulations promulgated by the Department of Health and Human Services ("DHHS") that implement the Health Insurance Portability and Accountability Act ("HIPAA") includes an attorney acting as his client's agent. Pursuant to the regulations, "*an individual* has a right of access to inspect and obtain a copy of protected health information . . . ." <u>Id.</u> at 1084, <u>quoting</u>, 45 C.F.R. § 164.524(a)(1) (emphasis in original). Upon an "*individual*['*s*] request[]" to inspect or obtain his records, the covered entity may impose a reasonable, cost-based fee" that was lower than the fee charged to someone other than the individual. <u>Id.</u>, <u>quoting</u>, 45 C.F.R. § 164.524(c)(4) (emphasis in original). The regulations defined "individual" as "the person who is the subject of the protected health information." <u>Id.</u>, <u>quoting</u>, 45 C.F.R. § 160.103.

In deciding the issue, the court first observed that "on their face," the regulations "restrict the fee limitations to requests made by the individual and concretely define "individual" in a way that excludes others acting on that individual's behalf." <u>Id.</u> (emphasis in original). Thus, the

---

[2] ILSA defines "person" to mean "an individual, or an unincorporated organization, partnership, association, corporation, trust, or estate [.]" 15 U.S.C. § 1701(2).

court stated that the plain meaning favored the defendant, who did not charge the lower, reasonable cost-based fee. Id.

Next, the court recited the "canon of statutory construction □xclusion□ unius est □xclusion alterius, which creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." Id. The court found that the DHHS "was fully capable of writing an even broader definition of the term [individual]." Id. at 1085. Thus, the court concluded that "individual" should be given its plain meaning. Id.

The court also considered the plaintiff's argument that because his attorney acted as his agent, his attorney, who made the request on his client's behalf, also was an "individual" under the DHHS regulations. Id. at 1087. The court recognized that under California law, an attorney is the client's agent. Id. at 1088. The court, however, deferred to a California state court's interpretation of agency law, which held that a lawyer's request for medical records was different than the client's personal requests for such records under the HIPAA regulations. Id. The state court noted that "a request by anyone other than the individual or his/her personal representative as defined in the regulations raises serious privacy concerns." Id., quoting, Bugarin v. Chartone, 38 Cal. Rptr. 3d 505, 510 (2006). In relying on the narrow definition of "individual," the Ninth Circuit held that the term "individual" did not include the individual's attorney.

The same rationale applies equally herein. First, ILSA, on its face, requires developers to provide a HUD Property Report strictly to the "purchaser or lessee." ILSA further restricts the definition of "purchaser" to the "actual or prospective purchaser or lessee." Thus, the term "purchaser" is defined in a way that excludes others acting on the purchaser's behalf, and the statute's plain meaning favors Plaintiffs. See, e.g., Estate of Pew v. Cardarelli, 527 F.3d 25, 30

-6-

(2d Cir. 2008) (stating that the court "first look[s] to the statute's plain meaning; if the language is unambiguous, [the court] will not look farther"); Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) (asserting that "[i]t is axiomatic that the plain meaning of a statute controls its interpretation, and that judicial review must end at the statute's unambiguous terms").

Second, the doctrine of *expressio unius est exclusio alterius* militates a finding that the term "purchaser" does not include the actual purchaser's attorney. This doctrine has been recognized and applied by the Second Circuit in constructing statutes. See, e.g., Jacobs v. New York Foundling Hosp., 577 F.3d 93, 100 (2d Cir. 2009) (stating that "[t]he ancient maxim *expressio unius est exclusio alterius* (mention of one impliedly excludes others) cautions us against engrafting an additional exception to what is an already complex [statute]"); Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 221 (2d Cir. 2008) (relying on "the familiar principle of *expressio unius est exclusio alterius* in finding that surface water runoff only under certain circumstances constituted nonpoint source pollution). Here, Congress was fully capable of writing a broader definition of the term "purchaser" to include the purchaser's attorney acting on his behalf. Congress chose not to do so, and even took the additional step of excluding a purchaser's attorney from the definition of "agent" under ILSA.

Providing a HUD Property Report to a purchaser's attorney is improper under ILSA.

**B.     ILSA Requires Developers to Produce a Receipt Signed By the Actual Purchaser to Prove it Provided the Purchaser With a HUD Property Report**

Not only does ILSA mandate that the HUD Property Report be provided to the actual purchaser, but ILSA's Regulations confirm that the only way to verify that the actual purchaser has received the HUD Property Report is for the purchaser to execute a receipt, which must be maintained by the developer for three years. Reference is made to 24 C.F.R. § 1710.118, which

-7-

includes the form of receipt that must accompany any HUD Property Report, a copy of which is annexed as Exhibit A to the Supplemental Declaration of Lawrence C. Weiner (the "Weiner Dec. II"). The form must state:

> We must give **you** a copy of this Property Report and give **you** an opportunity to read it before **you** sign any contract or agreement. By signing this receipt, **you** acknowledge that **you** have received a copy of our Property Report.

Id. (Emphasis added)

Further, the receipt is to be signed by the purchaser and a copy of the fully-executed receipt is to be maintained by the developer "for a period of three years from the date of execution or the term of the contract, whichever is longer." 24 C.F.R. § 1710.118(b).

Nothing in the required form receipt allows or acknowledges that the HUD Property Report can be given to or signed by purchaser's agent or attorney. It specifically states it must be given to "you," the purchaser. The very fact that the signed receipt (signed by the purchaser) must be maintained by the developer for three years evidences that the only way to prove the developer provided the HUD Property Report directly to the purchaser before he signed the purchase agreement is for the developer to produce the receipt signed and dated by the actual purchaser.

In the case at bar, it is undisputed that neither Aviral Rai or Sangeeta Rai: (1) received or reviewed a HUD Property Report prior to executing the purchase agreement or (2) signed the required receipt. (See ¶¶ 21-24 of Plaintiffs' Supplemental Statement of Undisputed Material Facts). WB IMICO has not and cannot produce these required receipts signed by Purchasers. Applying the clear and unambiguous terms of ILSA, WB IMICO failed to provide Purchasers the HUD Property Report. Since Purchasers timely exercised their right to rescind the Purchase

Agreement (see ¶ 18 to Plaintiffs' Statement of Material Facts dated March 4, 2010 and WB IMICO response thereto), they are entitled to the return of their deposit, plus all accrued interest.

**C.   WB IMICO Violated 24 C.F.R. § 1715.20**

24 C.F.R. § 1715.20, Unlawful Sales Practices Regulatory Provisions, provides in pertinent part:

> In selling, leasing or offering to sell or lease any lot in a subdivision it is an unlawful sales practice for any developer or agent, directly or indirectly, to: (a) Give the Property Report to a purchaser along with other materials when done in such a manner so as to conceal the Property Report from the purchaser.

Even a cursory view of the letter that WB IMICO relies on to show that it provided a HUD Property Report to Plaintiffs' attorney evidences that the HUD Property Report was buried amongst a slew of other documents and was done in such a manner as to conceal the HUD Property Report. Indeed, the reference to the HUD Property Report is buried amongst six other specific documents (several of which were multiple copies thereof). This type of delivery is expressly forbidden by 24 C.F.R. § 1715.20.

**D.   Allowing a Developer to Provide a HUD Property Report to a Purchaser's Attorney Eviscerates the Purpose and Intent of ILSA**

Requiring the HUD Property Report to be given to the actual purchaser[3] is consistent with the remedial purpose of ILSA, which is to protect purchasers. It is well established that ILSA "is to be construed to effectuate its rendered purpose of protecting the land sale consumer." Dorchester Development, Inc. v. Burk, 439 F.2d 1033, 1035 (Fla. 3d DCA 1983) (internal citations omitted). The Congressional purpose behind ILSA is to protect the consumer. Schatz

---

[3] WB IMICO certainly knows how to send required correspondence and notices directly to Purchasers. Annexed as Exhibit A to the Declaration of Aviral Rai are numerous notices and correspondence sent by either WB IMICO or its escrow attorney directly to Purchasers. Despite being able to send these notices and correspondence directly to Purchasers (not their attorney), it fatally chose to (purportedly) send a HUD Property Report to Purchasers' attorney.

v. Jockey Club Phase III Ltd., 604 F. Supp. 537, 542 (S.D. Fla. 1985). Congress designed ILSA to protect purchasers to prohibit fraud in real estate sales by requiring the developers to make certain disclosures **in advance** of a purchaser signing the purchase agreement. Ahn v. Merrifield Town Center Limited Partnership, 584 F. Supp.2d 848, 853 (E.D. Vir. 2008). Through ILSA's disclosure requirements, Congress intended to ensure that, "**prior to purchasing** certain types of real estate, **a buyer [is] appraised of information** needed to make an informed decision." Id., (internal citations omitted) (Emphasis added).

Allowing a developer to provide a HUD Property Report to a purchaser's attorney, burying it under several other documents and not requiring it to produce a receipt signed by the actual purchaser would deny a purchaser the ability and opportunity to review federally mandated written disclosures before he signs a purchase agreement; thereby defeating the purpose and intent of ILSA.

A simple review of the HUD Property Report provided to the Other Plaintiffs[4] evidences the serious magnitude of providing a prospective purchaser with the written disclosures contained in a HUD Property Report. First, the title of the document is in all capitals, "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING." 24 C.F.R. § 1710.105 requires that the cover page of the HUD Property Report specifically states this warning, that it be in 1/2 capital letters and in red type.[5] It is manifest that the purpose of this requirement is to make sure a prospective purchaser does not overlook and not review the HUD Property Report.

---

[4] See Exhibit C to the Declaration of Kaizy Haas.

[5] 24 C.F.R. § 1710.105 – Cover page, states in pertinent part:

The cover page of the Property Report shall be prepared in accordance with the following directions:

* * *

Second, the very first page of the HUD Property Report is titled "Risks of Buying Land."

Third, under the Risk of Buying Land section, the HUD Property Report contains the following warnings:

### WARNINGS

**THROUGHOUT THIS PROPERTY REPORT THERE ARE SPECIFIC WARNINGS CONCERNING THE DEVELOPER, THE PROJECT OR INDIVIDUAL TOWER UNITS. BE SURE TO READ ALL WARNINGS CAREFULLY BEFORE SIGNING ANY CONTRACT OR AGREEMENT.**

Based on the undisputed record, Plaintiffs were denied their federally mandated rights. It is urged that this Court apply ILSA as it is supposed to be construed and rule that providing a HUD Property Report to a purchaser's attorney and failing to produce a receipt signed by the actual purchaser is invalid under ILSA as a matter of law.

### POINT II

### WB IMICO'S FAILURE TO PROVIDE PURCHASERS WITH A HUD PROPERTY REPORT IS FATAL

Courts have routinely applied ILSA as written, namely, if no HUD Property Report was provided to the contract purchaser prior to the execution of the purchase agreement, the purchaser has the right to rescind. No ifs, ands or buts exist to this bright line rule.

"A property report, which would include part of the statement of record, **must** be submitted to the purchaser who may revoke the contract if it is not submitted. Conf. Rep. 90-1785 (1986), as reprinted in, 1968 U.S.C.C.A.N. 3053, 3066. (Emphasis added).

ILSA was designed to protect consumers. Rockefeller v. High Sky, Inc., 394 F. Supp. 303, 304 (E.D. Penn. 1975). "It is clear and explicit." Id. ILSA sets forth numerous conditions

---

(b) The next 3 inches shall contain a warning, centered, in 1/2 inch capital letters in *red type* with 1/4 inch space between the lines which reads as follows:

READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING

-11-

which must be met before developers may make sales of lots.  Id.  These conditions include the requirement to register the project with HUD and to file a statement of record "to be made available to the public."  Id.  ILSA also requires that a property report, containing so much of the information contained in the statement of record, **and such other information as the secretary may, by rules and regulations, require**, must be furnished to buyers before an agreement is signed.  Id. at 503.  (Emphasis added)  ILSA provides for remedies for a developer's failure to comply with these requirements.  Id.

In Rockefeller, the defendant developer argued that it should not be liable under HUD because it substantially complied with ILSA by giving plaintiffs "all, or substantially all, the information which the property report would have given him."  Id. at 305.  In granting plaintiffs' motion allowing rescission of the purchase agreement and addressing defendant's argument, the court held as follows:

> What defendant seeks an opportunity to prove is irrelevant.  The short answer to defendant's contention is that had Congress intended to provide developers with an alternative means of furnishing information to purchasers, it could have said so very plainly and simply.  Instead, **Congress clearly and explicitly made the purchaser's right to rescind depend only on the failure to file the statement of record and the failure to furnish the printed property report at or before the time of the signing of the agreement**.  Indeed, Congress provided that the property report had to be furnished at least forty-eight hours in advance of the signing, and that the forty-eight hour provision could be waived only if the agreement specifically so stipulates and then only if the purchaser acknowledged by his signature that he had received, read and understood the report and inspected the property before signing the agreement.

(Id.)  (Emphasis added).  See also, Burns v. Duplin Land Development, Inc., 7:07-CV-172-D, 2009 U.S. Dist. LEXIS 25278 *36 (E.D.N.C. Mar 27, 2009).  (The court declined to accept

"substantial compliance" under section 1703(a)(1)(C), citing, Rockefeller, supra, and Gaudet v. Woodlake Development Co., 399 F. Supp. 1005 (E.D. La. 1975)).

Boiled down to its essence, WB IMICO's position is that it substantially complied with ILSA's requirement to provide a HUD Property Report directly to the Purchaser before he signs the Purchase Agreement by providing the HUD Property Report to Purchasers' attorney. Such argument fails, as ILSA is "a strict liability statute enacted for the purpose of protecting the public." 200 East Partners, LLC v. Gold, 997 So.2d 466, 469 (Fla. App. Div. 4th Dist. 2008), rehearing denied (January 23, 2009). Since it is undisputed that Purchasers' never received the HUD Property Report -- as verified by the failure of WB IMICO to provide a copy of required, signed receipt -- WB IMICO should be barred from claiming it substantially complied with ILSA by providing a copy of the HUD Property Report to Purchasers' attorney, which was buried under several other documents in an effort to conceal same.

#3278910 (153978.001)

## CONCLUSION

For the reasons set forth in Plaintiffs' initial motion papers, the Other Plaintiffs' motion papers and the above, Plaintiffs' motion for partial summary judgment should be granted and Defendants' cross-motion for summary judgment should be denied.

WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys for Plaintiffs

By: _____
LAWRENCE C. WEINER

Dated: April 30, 2010

-14-