USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>September 27, 2013</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVIRAL RAI and SANGEETA RAI,

               Plaintiffs and Counter-Defendants,

               - against -

WB IMICO LEXINGTON FEE, LLC and
GARY BARNETT,

               Defendants and Counter-Claimants.

**MEMORANDUM**
**<u>OPINION & ORDER</u>**

09 Civ. 9586 (PGG)

HASKELL LIMITED INC.,

               Plaintiff and Counter-Defendant,

               - against -

WB IMICO LEXINGTON FEE, LLC,

               Defendant and Counter-Claimant.

09 Civ. 9609 (PGG)

JESSICA BENHAMOU,

               Plaintiff and Counter-Defendant,

               - against -

WB IMICO LEXINGTON FEE, LLC,

               Defendant and Counter-Claimant.

09 Civ. 9610 (PGG)

GARRETT BAUER,

               Plaintiff and Counter-Defendant,

               - against -

WB IMICO LEXINGTON FEE, LLC,

               Defendant and Counter-Claimant.

09 Civ. 9611 (PGG)

MARILYN H. EZZES,

        Plaintiff and Counter-Defendant,

           - against -                  09 Civ. 9612 (PGG)

WB IMICO LEXINGTON FEE, LLC,

        Defendant and Counter-Claimant.

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs are purchasers of condominium units in "The Lucida," a condominium development in Manhattan sponsored and developed by Defendant WB Imico Lexington Fee, LLC.[1]  On March 19, 2012, this Court granted Plaintiffs' motions for summary judgment and denied Defendant's cross-motions for summary judgment, holding that Defendant's failure to include tax lot numbers in the purchase agreements executed by Plaintiffs constituted a violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-20 (2009) ("ILSA" or the "Act") that permits Plaintiffs to rescind the agreements and recover their deposits.  Rai v. WB Imico Lexington Fee, LLC, 851 F. Supp. 2d 615, 626-28 (S.D.N.Y. 2012).

        On February 8, 2013, Defendant moved for this Court to vacate its March 19, 2012 Memorandum Opinion and Order (the "March 2012 decision"), and to grant summary judgment in Defendant's favor, in light of the Second Circuit's intervening decision in Bacolitsas v. 86th & 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2012).  (Rai Dkt. No. 63; Haskell Dkt. No. 76; Benhamou Dkt. No. 73; Bauer Dkt. No. 75; Ezzes Dkt. No. 75)

        For the reasons stated below, Defendant's motion to vacate will be granted to the extent that this Court's March 2012 decision holds that the purchase agreements at issue violate

---

[1]  The Rais also sued Gary Barnett, who is a principal of WB Imico.  (Am. Cmplt. (Rai Dkt. No. 7) ¶ 7)  "Defendant" as used in this order refers to both WB Imico and Barnett.

15 U.S.C. § 1703(d)(1), and that Plaintiffs Haskell Limited Inc., Jessica Benhamou, Garrett

Bauer, and Marilyn Ezzes are entitled to summary judgment.  This Court nonetheless holds that

Plaintiffs Aviral Rai and Sangeeta Rai are entitled to summary judgment, because they were not

provided with a copy of the property report for the condominium, in violation of 15 U.S.C.

§ 1703(a)(1)(B).  Defendant's motion for summary judgment on its counterclaims will be denied

as to the Rai Plaintiffs, but granted as to Plaintiffs Haskell Limited Inc., Jessica Benhamou,

Garrett Bauer, and Marilyn Ezzes.

## BACKGROUND[2]

The Lucida is a condominium development located at 151 East 85th Street, New

York, New York.  (Pltfs. R. 56.1 Stmt. ¶ 2)[3]  Between June 25, 2007 and February 27, 2008,

---

[2]  Familiarity with this Court's prior opinions and orders in this action is presumed, and the Court sets forth only a summary of the facts and rulings most pertinent to the instant motions.
[3]  Unless otherwise noted, citations to the parties' Local Rule 56.1 statements concern factual assertions that were admitted or are deemed admitted because the opposing party did not contradict them with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).

Plaintiffs Haskell, Benhamou, Bauer, and Ezzes filed joint summary judgment papers.  These joint submissions will be cited according to their docket numbers on the Haskell docket (No. 09 Civ. 9609).

There has been extensive motion practice in this case, including multiple rounds of summary judgment briefing, during which the parties filed joint Local Rule 56.1 statements, re-filed earlier Local Rule 56.1 statements, or filed slightly amended versions of earlier Local Rule 56.1 statements.  The operative Local Rule 56.1 statements and responses are cited as follows:  "Pltfs. R. 56.1 Stmt." refers to Plaintiffs' Revised Amended Joint Rule 56.1 Statement, dated May 2, 2011.  (Haskell Dkt. No. 43)  "Rai R. 56.1 Stmt. I" refers to the Rais' Rule 56.1 Statement, dated Mar. 5, 2010.  (Rai Dkt. No. 15)  "Rai R. 56.1 Stmt. II" refers to the Rais' Rule 56.1 Statement, dated May 2, 2011.  (Rai Dkt. No. 39)  "Rai Supp. R. 56.1 Stmt." refers to the Rais' Supplemental Rule 56.1 Statement, dated Apr. 30, 2010.  (Rai Dkt. No. 30)  "Def. R. 56.1 Stmt." refers to Defendant's Rule 56.1 Statement, dated May 2, 2011.  (Haskell Dkt. No. 48)  "Pltfs. R. 56.1 Resp." refers to Plaintiffs' Joint Response to Defendant's Rule 56.1 Statement, dated Apr. 30, 2010.  (Haskell Dkt. No. 30)  "Rai R. 56.1 Resp. I" refers to the Rais' Response to Defendant's Rule 56.1 Statement, dated Apr. 30, 2010.  (Rai Dkt. No. 26)  "Rai R. 56.1 Resp. II"

each Plaintiff executed a substantially similar purchase agreement for a condominium unit in The Lucida, and each paid Defendant a deposit pursuant to those agreements. Rai, 851 F. Supp. 2d at 619 n.3. Each purchase agreement specifies the number of the condominium unit purchased. (Agreements ¶ 3)[4]

The purchase agreements incorporate by reference the offering plan for The Lucida (the "Offering Plan"). (Agreements ¶ 1; Apr. 8, 2010 Haas Decl. (Haskell Dkt. No. 22), Ex. A (Offering Plan)) The Offering Plan sets forth tax lot numbers for The Lucida as a whole, describes its location in relation to streets and avenues in Manhattan, describes the surrounding neighborhood and the condition of the land on which the building is constructed, specifies the number of stories and basement levels in the building, and provides extensive details about the building's construction. (Offering Plan 1, 34-36, 250-68) The Offering Plan also lists the total number of units in the building, describes the units and their construction materials in detail, and contains a chart that provides the number of bedrooms and bathrooms in each unit, the approximate square footage of each unit and its associated storage areas, and the percentage of the condominium's common elements associated with ownership of each unit.[5] (Offering Plan 1, 22-26, 39-48, 264-66) The Offering Plan lists those common elements, as well as services and facilities available to the unit owners. (Offering Plan 26-33) Finally, the Offering Plan includes floor plans that show the layout of the units and the units' locations within the building. (Offering Plan 269-349)

refers to the Rais' Response to Defendant's Rule 56.1 Statement, dated May 23, 2011. (Rai Dkt. No. 42) "Def. R. 56.1 Resp." refers to Defendant's Response to Plaintiffs' Amended Joint Rule 56.1 Statement, dated March 16, 2011. (Haskell Dkt. No. 36)

[4] "Agreements" refers collectively to Plaintiffs' purchase agreements. The key financial provisions of the purchase agreements are set forth in Rai, 851 F. Supp. 2d at 619 n.3.

[5] Unit ownership includes ownership of a percentage of the common elements of the condominium development, such as the land on which the building sits, the corridors, and the security system. (Offering Plan 5, 26-27)

Tax lot numbers for each individual unit are not provided in the purchase agreements, nor are they set forth in the Offering Plan incorporated therein.

Between June 23, 2009 and November 9, 2009 – within two years of executing their respective purchase agreements – each Plaintiff sent a notice to WB Imico purporting to revoke their purchase agreement due to WB Imico's alleged failure to comply with ILSA's disclosure requirements.  (Rai R. 56.1 Stmt. II ¶ 18, Ex. B; Pltfs. R. 56.1 Stmt. ¶ 9; May 2, 2011 Moss Decl. (Haskell Dkt. No. 84), Exs. 5, 10, 15, 20)  Plaintiffs likewise demanded the immediate return of their respective deposits.  (Rai R. 56.1 Stmt. II, Ex. B; Pltfs. R. 56.1 Stmt. ¶ 9; May 2, 2011 Moss Decl. (Haskell Dkt. No. 84), Exs. 5, 10, 15, 20)  WB Imico has not returned to Plaintiffs any portion of their deposits.  (See Rai R. 56.1 Stmt. II ¶ 19; Pltfs. R. 56.1 Stmt. ¶ 10)

On November 18, 2009, Plaintiffs Haskell, Benhamou, Bauer, and Ezzes filed complaints claiming that Defendant violated ILSA by (1) failing to list a tax lot number for each unit in each Plaintiff's purchase agreement, as 15 U.S.C. § 1703(d)(1) allegedly requires; and (2) including damages provisions in each Plaintiff's purchase agreement that are not in accordance with 15 U.S.C. § 1703(d)(3).  (Haskell Dkt. No. 1; Benhamou Dkt. No. 1; Bauer Dkt. No. 1; Ezzes Dkt. No. 1).  That same day, the Rais filed a complaint alleging that Defendant violated 15 U.S.C. § 1703(a)(1)(B) by failing to furnish a copy of the property report for the condominium to them before they executed their purchase agreement.  (Rai Dkt. No. 1)  On January 28, 2010, the Rais amended their Complaint to add claims under Sections 1703(d)(1) and (3) as alleged by the other Plaintiffs.  (Rai Dkt. No. 7)  All Plaintiffs seek revocation of their purchase agreements, return of their deposits, and attorneys' fees and costs.

On or about December 28, 2009, each Plaintiff received a notice from WB Imico setting a closing date of February 1, 2010.[6]  (Def. R. 56.1 Stmt. ¶ 1; Apr. 8, 2010 Haas Decl. (Haskell Dkt. No. 22) ¶ 7, Exs. E-H; Apr. 8, 2010 Haas Decl. (Rai Dkt. No. 48) ¶ 7, Ex. E)  WB Imico asserts that none of the Plaintiffs closed on the designated closing date, and that the time for Plaintiffs to exercise their rights to close under their respective purchase agreements has expired.[7]  (Def. R. 56.1 Stmt. ¶¶ 2-3)  In April 2011, Defendant filed a counterclaim for breach of contract against each Plaintiff.  (Rai Dkt. No. 37; Haskell Dkt. No. 39; Benhamou Dkt. No. 38; Bauer Dkt. No. 37; Ezzes Dkt. No. 40)  Defendant seeks a declaration that it may retain Plaintiffs' deposits, and an award of attorneys' fees and costs.

## DISCUSSION

### I.     LEGAL STANDARD

Federal Rule of Civil Procedure 60 provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Under Local Rule 6.3, a motion for reconsideration may be granted . . . when there has been 'an intervening change in controlling law.'"  Kirkland v. Cablevision Sys., No. 09 Civ. 10235 (LAP) (KNF), 2013 WL 4509644, at *1 (S.D.N.Y. Aug. 23, 2013) (quoting Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007); see also Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a

---

[6]  Plaintiffs dispute that all Plaintiffs received such a notice (Pltfs. R. 56.1 Resp. ¶ 1), but they have not cited to admissible evidence in support of their claim.

[7]  Plaintiffs dispute that they declined to close on the designated closing date and that their time to exercise their rights to close has expired, asserting that they had previously rescinded their purchase agreements under ILSA.  (Pltfs. R. 56.1 Resp. ¶¶ 2-3; Rai R. 56.1 Resp. ¶¶ 4-5)

clear error or prevent manifest injustice." (internal quotation omitted)).  "Because the law is

constantly evolving, a new decision clarifying the applicable substantive law may justify

reexamining a denial of summary judgment."  Kirkland, 2013 WL 4509644, at *1 (quoting

Caribbean Wholesales & Serv. v. U.S. JVC Corp., 101 F. Supp. 2d 236, 240 (S.D.N.Y. 2000)).

        Summary judgment is warranted when the moving party shows that "there is no

genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes

where the evidence is such that a reasonable jury could decide in the non-movant's favor."

Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d

140, 145 (2d Cir. 2007)).  "The same standard applies where, as here, the parties filed cross-

motions for summary judgment. . . ."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d

Cir. 2001) (citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)).

## II.   THE PURCHASE AGREEMENTS DO NOT VIOLATE ILSA'S LOT DESCRIPTION REQUIREMENT

        Section 1703(d)(1) of ILSA provides that

> [a]ny contract or agreement which is for the sale or lease of a [non-exempt] lot . . .
> which does not provide . . . a description of the lot which makes such lot clearly
> identifiable and which is in a form acceptable for recording by the appropriate
> public official responsible for maintaining land records in the jurisdiction in
> which the lot is located . . . may be revoked at the option of the purchaser or
> lessee for two years from the date of the signing of such contract or agreement.

15 U.S.C. § 1703(d)(1) (emphasis added).  Under New York law, the conveyance of a

condominium cannot be recorded unless accompanied by a report that includes the tax lot

information for the unit.  Rai, 851 F. Supp. 2d at 626 (citing N.Y. Real Prop. L. § 333(1-

e)(ii)(3)).[8]  Accordingly, in its March 2012 decision, this Court held that the purchase

agreements at issue here violate Section 1703(d)(1), because they do not contain tax lot

information for the individual units, and therefore are not "in a form acceptable for recording."

Rai, 851 F. Supp. 2d at 626-28.

        After this Court's decision, the Second Circuit issued a decision in Bacolitsas v.

86th & 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2012).  In that case, purchasers of a

condominium unit sought to revoke their purchase agreement under Section 1703(d)(1), because

it did not contain a "unit description clause" specifying "the liber, page and date of recording of

the declaration," which are details necessary for recording a condominium unit deed under New

York law.  Bacolitsas, 702 F.3d at 681.   The district court granted the purchasers' motion for

summary judgment on different grounds, holding that because the purchase agreement itself

could not be recorded under New York law, it was not "in a form acceptable for recording" and

therefore violated Section 1703(d)(1).[9]  Id. at 679.

        The Second Circuit rejected this reasoning, holding that "under 15 U.S.C. §

1703(d)(1), the 'description of the lot' in the underlying contract or agreement – and not that

contract or agreement itself – must be 'in a form acceptable for recording' in the 'jurisdiction in

which the lot is located'":

> The phrase "which is in a form acceptable for recording" in § 1703(d)(1) modifies
> the word "description" at the beginning of that same sentence, not the more
> distant nouns "contract or agreement" located in the prior section. . . .  The most

---

[8]  N.Y. Real Property Law § 333(1-e)(ii)(3) provides:  "A recording officer shall not record or accept for record any conveyance of real property affecting land in New York state unless accompanied by a transfer report form prescribed by the commissioner of taxation and finance . . . [which] shall contain . . . the appropriate tax map designation, if any."

[9]  The District Court found that the purchase agreement could not be recorded because it had not been "'acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded. . . .'"  Bacolitsas v. 86th and 3rd Owner, LLC, No. 09 Civ. 7158 (PKC), 2010 WL 3734088, at *6 (S.D.N.Y. Sept. 21, 2010) (quoting N.Y. Real Prop. L. § 294(1)).

natural reading of § 1703(d)(1), therefore, is that a "contract or agreement" may be revocable within two years of the date of signing if that document does not include a <u>description</u> of the lot in question which (1) "makes such lot clearly identifiable" <u>and</u> (2) "is in a form acceptable for recording."  Whether the contract or agreement itself is "in a form acceptable for recording" is immaterial.

Additionally (and contrary to the district court's reasoning), that a description of a lot standing alone may not be recordable under New York law does not compel a different construction of § 1703(d)(1).  The district court read into the statute language that is not there.  Section 1703(d)(1) does not require that the description of the lot be <u>a recordable document</u>, only that it be "<u>in a form acceptable for recording</u>." . . .

Finally, reading § 1703(d)(1) to require that the <u>description</u> of a lot – and not the agreement or contract – be "in a form acceptable for recording" aligns with ILSA's underlying purpose.  One of the core functions of ILSA is "to prevent false and deceptive practices in the sale of . . . land by requiring developers to disclose information needed by potential buyers."  <u>Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.</u>, 426 U.S. 776, 778 (1976); <u>see</u> <u>Bodansky v. Fifth on the Park Condo, LLC</u>, 635 F.3d 75, 80 (2d Cir. 2011) (observing that ILSA was enacted in response to an epidemic of unscrupulous marketing and sale of undeveloped subdivided land and was designed to "require[ ] full disclosure to buyers of [such] land"); <u>accord</u> <u>Long v. Merrifield Town Ctr. L.P.</u>, 611 F.3d 240, 245 (4th Cir. 2010); <u>Winter v. Hollingsworth Props., Inc.</u>, 777 F.2d 1444, 1446-47 (11th Cir. 1985).  Construing § 1703(d)(1) to mandate that the description of a lot in a contract or agreement be clear and specific enough to satisfy generally the local recording statutes "in the jurisdiction in which the lot is located," § 1703(d)(1), furthers this goal because it guarantees that developers provide potential buyers with the information they need to make an informed decision about their purchase.  <u>See Long</u>, 611 F.3d at 245.  By comparison, interpreting the statute to require that the contract or agreement satisfy the technical requirements for recordability in the applicable local jurisdiction does not further this purpose.

<u>Id.</u> at 679-80.

Turning to the purchasers' argument that the purchase agreement was deficient under ILSA because it did not contain a form setting forth the "liber, page and date of recording of the declaration," the Second Circuit found that

nothing in § 1703(d)(1) suggests that Congress intended that the description of the lot mandated under ILSA be coextensive with what is required for conveyance of an individual unit in the relevant jurisdiction. . . .  ILSA's origins confirm that Congress was concerned with disclosure, <u>not</u> conveyance.  By enacting ILSA, Congress sought to curtail rampant misleading advertising and sale of

undeveloped subdivided land by creating a national standard to guarantee full disclosure for the benefit of prospective buyers, not to harmonize local requirements for the conveyance of undeveloped lots.

Id. at 681-82.

In rejecting the purchasers' argument, the Second Circuit also emphasized that "their construction of the statute contradicts industry practice":

> [I]t is common in New York for sponsors to offer units for sale and to enter into purchase agreements for those units prior to the filing of the condominium declaration. . . . And because a condominium declaration ordinarily cannot be filed until new tax lot numbers are assigned to each unit, which can only occur once construction is complete, see N.Y. Real Prop. L. § 339-p, buyers often will execute purchase agreements before the declaration is recorded, i.e., prior to completion of the development. Plaintiffs' interpretation would prohibit this common and long-standing practice. If, as Plaintiffs urge, the description of the lot must be in a form acceptable for recording the deed, then a purchase agreement for a unit could be executed only after construction was finished because it is only at that point that the declaration would be recorded, and thus that the "liber, page and date of recording of the declaration" – required for a deed, see N.Y. Real Prop. L. § 339-o – would be obtainable. Nothing in ILSA suggests that Congress intended this outcome. To the contrary, other provisions of the statute confirm that Congress was aware of the practice of pre-completion sales and contemplated that the description of a unit required under § 1703(d)(1) may not be adequate for conveyance.

Id. at 682. The court went to conclude that under the "plain language" of Section 1703(d)(1), "the description of the lot need not be equivalent to the type of description required to convey the unit," and that the description of the unit set forth in the Bacolitsas purchase agreement satisfied ILSA. Id. at 683-84.

This Court's March 2012 decision cannot stand under Bacolitsas. This Court had concluded that Plaintiffs' purchase agreements violated ILSA because they were not suitable for recording the conveyance of the units, given that they did not contain tax lot numbers for the units. Bacolitsas makes clear that ILSA addresses "disclosure, not conveyance." Id. at 681. The

fact that the purchase agreements are not recordable – because they lack tax lot numbers – "is immaterial."  Id. at 680.

Plaintiffs argue that Bacolitsas is not fatal to their cause, because the issue of tax lot numbers was not squarely presented there.  (Pltfs. Opp. Br. (Haskell Dkt No. 80) at 3-5)  The Second Circuit's reasoning as to "liber, page and date of recording of the declaration" applies with equal force to unit-specific tax lot numbers, however.  The Circuit explicitly acknowledged that (1) tax lot numbers would not be available for units in yet-to-be-constructed condominium developments such as that purchased by Bacolitsas; and (2) purchasers commonly execute purchase agreements for units in condominium developments not yet completed.  Bacolitsas, 702 F.3d at 682.  The court nonetheless held that the absence of information in a purchase agreement that would be necessary for conveyance – such as tax lot numbers – does not present a disclosure issue under ILSA, because "Congress was aware of the practice of pre-completion sales and contemplated that the description of a unit required under § 1703(d)(1) may not be adequate for conveyance."  Id.  In sum, after Bacolitsas, there is no tenable argument that purchase agreements must contain tax lot numbers in order for developers to avoid a risk of rescission under Section 1703(d)(1).

Plaintiffs have not otherwise argued that the descriptions of their units in the purchase agreements are deficient under ILSA.  In Bacolitsas, the Second Circuit found that a description containing the following information satisfied ILSA:

    (1) A "[d]escription of the land on which the building and improvements are or are to be located[;]"

    (2) A "[d]escription of the building, including the location of the building by reference to fixed monuments or tax map parcel data, stating the number of stories, basements and cellars, the number of units and the principal materials of which it is or is to be constructed[;]"

    (3) "The unit designation of each unit, and a statement of its location, approximate area, number of rooms in residential areas, and common element to which it has immediate access, and any other data necessary for its proper identification[;]" and

    (4) A "[d]escription of the common elements and a statement of the common interest of each unit owner."

Id. at 684 n.6 (quoting N.Y. Real Prop. L. § 339-n).

        As discussed above, Plaintiffs' purchase agreements and the Offering Plan incorporated therein contain all of this information.  Accordingly, Plaintiffs' purchase agreements do not violate Section 1703(d)(1) of ILSA, and Plaintiffs are not entitled to rescission on the grounds that Defendant made inadequate disclosure under that provision.

## III.   THE PURCHASE AGREEMENTS DO NOT VIOLATE ILSA'S LIQUIDATED DAMAGES CLAUSE

        Plaintiffs also argue that their purchase agreements are revocable under Section 1703(d)(3) of ILSA.  (Am. Cmplt. (Rai Dkt. No. 7) ¶¶ 70-79; Cmplts. (Haskell Dkt. No. 1; Benhamou Dkt. No. 1; Bauer Dkt. No. 1; Ezzes Dkt. No. 1) ¶¶ 55-64)  Section 1703(d)(3) provides that a purchase agreement may be revoked within two years of execution if it does not state that, in the event of a purchaser's breach, the developer

> shall refund to such purchaser . . . any amount which remains after subtracting (A) 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, or the amount of damages incurred by the [developer] as a result of such breach, whichever is greater, from (B) the amount paid by the purchaser . . . with respect to the purchase price of the lot, excluding any interest paid under the contract or agreement.

15 U.S.C. § 1703(d)(3).  Plaintiffs contend that their purchase agreements do not include this language and are therefore revocable.  Because this Court held in its March 2012 decision that Plaintiffs' purchase agreements were revocable under Section 1703(d)(1), it did not reach this argument.  Rai, 851 F. Supp. 2d at 621 n.7.  Having now found – in

light of <u>Bacolitsas</u> – that Plaintiffs' purchase agreements satisfy Section 1703(d)(1), the

Court will now consider whether these agreements violate Section 1703(d)(3).[10]

Plaintiffs' purchase agreements provide that if a Plaintiff defaults under the

purchase agreement:

> [Developer] (a) may retain all sums deposited by Purchaser hereunder . . .
> together with interest earned thereon, and (b) shall have the right to receive all or
> any portion of the Deposit (if some has not been previously paid) together with
> such additional sums as may aggregate the amount of damages incurred by
> [Developer]. . . .  Notwithstanding the foregoing, if and only to the extent that the
> sale of the Unit is not exempt from the provisions of [ILSA], the amount of the
> Deposit to be retained by [Developer] upon Purchaser's [default] . . . will be the
> greater of (i) fifteen percent (15%) of the Purchase Price (excluding any interest
> owed) or (ii) the amount of damages incurred by [Developer] due to the default.

(Agreements ¶ 15.2)  The purchase agreements further provide that

> Purchaser shall be obligated to reimburse [Developer] for any legal fees and
> disbursements incurred by [Developer] in defending [Developer's] rights under
> this Agreement or, in the event Purchaser defaults under this Agreement beyond
> any applicable grace period, in cancelling this Agreement or otherwise enforcing
> Purchaser's obligations hereunder.

(Agreements ¶ 32)

Plaintiffs argue that the conditional language used to describe the application of

ILSA vitiates the required statutory notice, because it does not clearly communicate that

Defendant is barred from collecting damages in excess of what is permitted under the Act.  (May

2, 2011 Pltfs. Br. (Haskell Dkt. No. 62) at 17-19)  This argument was squarely rejected by the

Second Circuit in <u>Bacolitsas</u>.  There, the Second Circuit held that Section 1703(d)(3) of ILSA

was satisfied by language identical to that found in paragraph 15.2 of the purchase agreements

---

[10]  Plaintiffs do not brief their Section 1703(d)(3) claim in their opposition to Defendant's instant
motion to vacate and for summary judgment.  (<u>See</u> Pltfs. Opp. Br. (Haskell Dkt. No. 80))
Nonetheless, this claim is pleaded in Plaintiffs' complaints, was the subject of earlier briefing
(<u>see</u> May 2, 2011 Pltfs. Br. (Haskell Dkt. No. 62) at 17-19), and is addressed by Defendant in its
briefing on its instant motions.  (<u>See</u> Def. Br. (Haskell Dkt. No. 78) at 6-7)  Therefore, this claim
must be addressed in order to resolve Defendant's motion for summary judgment.

here.  Bacolitsas, 702 F.3d at 685.  As the Second Circuit explained, "[t]he language of the contract is clear:  insofar as ILSA applies, the liquidated damages for Plaintiffs' breach shall be capped at the greater of 15% of the total purchase price or actual damages as a result of default."  Id.  Accordingly, Plaintiffs are not entitled to revoke their purchase agreements on the basis of the conditional language Defendant employed.[11]

      Plaintiffs further argue that their purchase agreements violate ILSA because they do not affirmatively require Defendant to refund any portion of their deposits.  (May 2, 2011 Pltfs. Br. (Haskell Dkt. No. 62) at 17)  This argument is unavailing.  There is no meaningful difference between the language in ILSA – which sets forth a formula for calculating the amount to be refunded to a purchaser – and the language in the Plaintiffs' purchase agreements – which sets forth a formula for calculating the amount to be retained by a developer.  Both calculations lead to the same result.  See Bacolitsas, 702 F.3d at 684 (characterizing Section 1703(d)(3) as requiring purchase agreements to specify the amounts "the seller can retain").  In any event, each Plaintiff paid only 15% of the purchase price of their unit, and therefore would not be entitled to any greater refund.  See Rai, 851 F. Supp. 2d at 619 n.3.

      Finally, Plaintiffs argue that the attorneys' fees provision in paragraph 32 of their purchase agreements violates ILSA by requiring them to pay a separate penalty beyond what is permitted by ILSA.  (May 2, 2011 Pltfs. Br. (Haskell Dkt. No. 62) at 18-19)  Plaintiffs have cited no authority, however, for the proposition that a statutory cap on actual damages invalidates a

---

[11]  The Haskell purchase agreement provides for a "Third Deposit" to be paid at the closing or upon Plaintiff's default.  (May 2, 2011 Moss Decl. (Haskell Dkt. No. 84), Ex. 4, ¶ 4.1(c))  Haskell argues that this provision violates Section 1703(d)(3) because, in the event of Haskell's breach, it allows Defendant to recover additional funds, rather than provide any refund to Haskell.  (May 2, 2011 Pltfs. Br. (Haskell Dkt. No. 62) at 17-18)  The fact that Haskell might be required to pay additional funds upon its breach is not inconsistent with the ILSA caps.  Haskell would only be required to pay the Third Deposit to the extent that it had not already paid the greater of 15% of the purchase price or Defendant's actual damages.

contractual fee shifting provision.[12]   Indeed, at least one circuit court has affirmed an award of attorneys' fees to a developer-defendant that was granted summary judgment on a purchaser-plaintiff's ILSA claim.   Dolphin LLC v. WCI Cmtys., Inc., 715 F.3d 1243, 1251 (11th Cir. 2013) (holding that purchaser-plaintiff's claim for return of deposit due to misleading statements in purchase agreement was "inextricably intertwined with the contract," and "[a]ccordingly, the [d]istrict [c]ourt did not err in awarding [developer-defendant] attorney's fees pursuant to the attorney-fee provision of the contract").   Accordingly, the purchase agreements' requirement that the purchaser pay the developer's attorneys' fees in the event that the purchaser breaches the purchase agreement does not violate ILSA.

In sum, Plaintiffs have not demonstrated that Defendant violated Section 1703(d)(3) of ILSA.

## IV.   DEFENDANT VIOLATED ILSA'S DISCLOSURE REQUIREMENTS WITH RESPECT TO THE RAIS

In their Amended Complaint, the Rais allege that they are entitled to rescind their purchase agreement under Section 1703(c), because Defendant violated Section 1703(a)(1)(B) by failing to provide them with a copy of the property report for the condominium before they signed their purchase agreement.   (Am. Cmplt. (Rai Dkt. No. 7) ¶¶ 50-57)   As with Plaintiffs' Section 1703(d)(3) claim, this Court did not reach this argument in its March 2012 decision, because it found that all of Plaintiffs' purchase agreements were revocable under Section 1703(d)(1).   Rai, 851 F. Supp. 2d at 621 n.7.   Having now considered this argument, this Court

---

[12]   "It is well established that, under New York law, a contract provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable in an amount that is 'reasonable.'"   3H Enters., Inc. v. Murray, 994 F. Supp. 403, 404 (N.D.N.Y. 1998) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987)).

concludes that Defendant violated Section 1703(a)(1)(B) with respect to the Rais, such that they are entitled to rescind their purchase agreement under Section 1703(c).[13]

Pursuant to Section 1703(a)(1)(B) of ILSA, it is unlawful for a developer to sell a lot "unless a printed property report . . . has been furnished to the purchaser . . . in advance of the signing of any contract or agreement by such purchaser. . . ." 15 U.S.C. § 1703(a)(1)(B) (emphasis added). The Rais contend that they were "never provided with or reviewed a HUD Property Report prior to executing the purchase agreement, nor did [they] ever execute any receipt to verify that [they were] provided with a HUD Property Report."[14] (A. Rai Decl. (Rai Dkt. No. 40) ¶ 2; S. Rai Decl. (Rai Dkt. No. 41) ¶ 2; see also Rai Supp. R. 56.1 Stmt. ¶¶ 21, 23) Accordingly, the Rais assert that they are entitled to revoke their purchase agreement under Section 1703(c), which provides that if "the property report has not been given to the purchaser . . . in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser . . . within two years from the date of such signing. . . ."[15] 15 U.S.C. § 1703(c).

_____

[13] The Rais do not brief their Section 1703(a)(1)(B) and (c) claim in their opposition to Defendant's instant motions to vacate and for summary judgment. (See Pltfs. Opp. Br. (Haskell Dkt. No. 80)) Nonetheless, this claim is pleaded in the Rai Plaintiffs' Amended Complaint, was the subject of earlier briefing (see May 7, 2010 Def. Reply Br. (Rai Dkt. No. 23); May 2, 2011 Def. Br. (Rai Dkt. No. 49) at 7; May 23, 2011 Rai Br. (Rai Dkt. No. 43)), and is addressed by Defendant in its briefing on its instant motions. (See Def. Br. (Haskell Dkt. No. 78) at 7) Therefore, this claim must be considered in order to resolve Defendant's motion for summary judgment.

[14] Defendant does not contend otherwise.

[15] It is undisputed that the Rais revoked their purchase agreement within two years of signing it. (Rai R. 56.1 Stmt. II, Ex. A (purchase agreement dated November 12, 2007), Ex. B (revocation letter dated November 9, 2009))

In response, Defendant argues that it satisfied its obligations under Section 1703(a)(1)(B) by sending the property report to the Rai Plaintiffs' attorney.[16]  (May 2, 2011 Def. Br. (Rai Dkt. No. 49) at 7; see generally May 7, 2010 Def. Reply Br. (Rai Dkt. No. 23)) According to Defendant, delivery to an agent such as an attorney constitutes delivery to the principal, and "nothing in ILSA's text or legislative history suggests that fundamental principles of agency are not fully applicable in this context as in every other."[17]  (May 7, 2010 Def. Reply Br. (Rai Dkt. No. 23) at 5; see also May 2, 2011 Def. Br. (Rai Dkt. No. 49) at 7)

ILSA states that the property report must be "furnished to the purchaser," however, and allows for revocation when the property report "has not been given to the purchaser."[18]  15 U.S.C. § 1703(a)(1)(B), (c) (emphasis added).  ILSA defines "purchaser" to

---

[16]  In one Local Rule 56.1 response submitted in this action, the Rais assert that, without discovery, they can "neither admit nor deny whether Plaintiffs' counsel received the [Property Report]."  (Rai R. 56.1 Resp. II ¶ 1)  In an earlier Rule 56.1 response, however, the Rais admit that "[i]t is not disputed that [Defendant] sen[t] a copy of a HUD Property Report, along with numerous other documents, to Plaintiffs' real estate attorney on or about October 29, 2007." (Rai R. 56.1 Resp. I ¶ 1)  Indeed, the Rais attached Defendant's October 29, 2007 transmittal letter to their own Rule 56.1 statement submitted in support of their first motion for summary judgment.  (Rai R. 56.1 Stmt. I, Ex. B)  In any event, the Rai Plaintiffs' belated lack of certainty about whether their attorney received the property report is not sufficient to create a material issue of fact given their admissions concerning this subject.  See Local Rule 56.1 (each statement of fact "will be deemed admitted for purposes of the motion unless specifically controverted" by the opposing party); Constance v. Pepsi Bottling Co. of N.Y., No. 03 Civ. 5009 (CBA) (MDG), 2007 WL 2460688, at *17 n.6 (E.D.N.Y. Aug. 24, 2007) ("[P]laintiff['s] claim [that] he 'lacks sufficient knowledge and can neither confirm nor deny the allegations' . . . does not suffice to create an issue of material fact.").

[17]  Defendant notes that "ILSA 'is based on the full disclosure provisions and philosophy of the Securities Act of 1933,'" (May 7, 2010 Def. Reply Br. (Rai Dkt. No. 23) at 5 (citing Flint Ridge Dev. Co., 426 U.S. at 778), and argues that "[c]ourts have expressly held that standard agency principles apply to actions under the Securities Act as well as the Securities Exchange Act of 1934." (Id. (citations omitted)).  Defendant has not cited any in-circuit authority for this proposition, which in any event would not trump contrary statutory language in ILSA.

[18]  Defendant argues that while the Act requires that the property report be "furnished to the purchaser" or "given to the purchaser," it does not specify who must furnish or give it to the purchaser.  (May 7, 2010 Def. Reply Br. (Rai Dkt. No. 23) at 6)  This argument is unavailing. There is no suggestion in the Act that Congress intended this obligation to fall on anyone other

mean "an actual or prospective purchaser or lessee of any lot in a subdivision."[19]  15 U.S.C. §
1701(10).  The definition of "purchaser" does not reference agents.  Id.

       Defendant's argument that "nothing in ILSA's text . . . suggests that fundamental
principles of agency are not fully applicable in this context as in every other" (May 7, 2010 Def.
Rai Reply Br. (Dkt. No. 23) at 4-5; see also May 2, 2011 Def. Br. (Dkt. No. 49) at 7) is exactly
wrong.  "Agent" is a defined term in the Act, and the definition Congress chose is not consistent
with common law principles of agency.

       "Agent" is defined in ILSA as "any person who represents, or acts for or on
behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a
subdivision; but shall not include an attorney at law whose representation of another person
consists solely of rendering legal services."  15 U.S.C. § 1701(6) (emphasis added).  The
definition of "agent" does not mention purchasers.  Furthermore, the statute repeatedly uses the
term "agent" when it defines obligations of developers.  See, e.g., id. § 1703(a) (making certain
conduct "unlawful for any developer or agent"); id. § 1706(e) (providing penalties if "the
developer or any agents shall fail to cooperate" in examinations by the Director of the Bureau of
Consumer Financial Protection"; id. § 1709(a) ("A purchaser or lessee may bring an action at

---

than the developer or its agent.  See 15 U.S.C. § 1701(a) (listing property report delivery
requirement in section setting forth prohibited activities that are "unlawful for any developer or
agent" to engage in); Flint Ridge Dev. Co., 426 U.S. at 778 (ILSA was "designed to prevent false
and deceptive practices in the sale of [real estate] by requiring developers to disclose information
needed by potential buyers") (emphasis added).  In any event, there is no evidence here that the
Rais received the property report from any other source.  (A. Rai Decl. (Rai Dkt. No. 40) ¶ 2
(Plaintiff was "never provided with or reviewed a HUD Property Report prior to executing the
purchase agreement"); S. Rai Decl. (Rai Dkt. No. 41) ¶ 2 (same))
[19]  Defendant's argument (see May 7, 2010 Def. Rai Reply Br. (Dkt. No. 23) at 6-7) that the
narrow definition of "purchaser" only applies for standing purposes – i.e., to determine who has
a private right of action under ILSA – is refuted by the text of the statute.  The definition of
"purchaser" appears in the main "Definitions" section, which applies to ILSA generally, not
merely in a provision addressing private right of action.  See 15 U.S.C. § 1701.

law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a). . . ."). The Act does not, at any point, use the term "agent" in connection with the rights and obligations of purchasers.

This statutory scheme indicates that Congress was cognizant of agency principles when drafting ILSA; chose to define the term "agent" in a highly restrictive fashion that relates only to developers and not to purchasers; and – in excluding attorneys – adopted a definition that is not consistent with common law principles. It would be anomalous to conclude that Congress intended "purchaser" to include agents when Congress chose to define "agent" as a "person who represents, or acts for or on behalf of, a developer." Id. § 1701(6) (emphasis added). See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) (the "usual rule" is that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended") (internal quotations and citation omitted).

This interpretation of ILSA is also fully consistent with its statutory purpose. As the Second Circuit stated in Bacolitsas, "[o]ne of the core functions of ILSA is 'to prevent false and deceptive practices in the sale of . . . land by requiring developers to disclose information needed by potential buyers.'" Bacolitsas, 702 F.3d at 680 (quoting Flint Ridge Dev. Co., 426 U.S. at 778; see also Indomenico v. 123 Washington, LLC, 813 F. Supp. 2d 403, 406 (S.D.N.Y. 2011) ("The purpose of the Act was 'to protect purchasers from unscrupulous sales of [real estate] . . . .'") (quoting Beauford v. Helmsley, 740 F. Supp. 201, 209 (S.D.N.Y.1990)). Requiring developers to ensure that purchasers – as opposed to their agents – receive property reports makes it more likely that "potential buyers [will actually receive] the information they need to make an informed decision about their purchase." Id.; see also Sun Kyung Ahn v. Merrifield Town Ctr. Ltd. P'ship, 584 F. Supp. 2d 848, 854-55 (E.D. Va. 2008) ("Taken

together, [ILSA's property report disclosure] provisions reflect Congress's recognition that the need for buyer protection is critical prior to the time the buyer makes the decision to sign and incur obligations; accordingly, the seller must provide the property report before the buyer signs the contract so the buyer can make an informed decision.").

Implementing regulations for ILSA promulgated by the U.S. Department of Housing and Urban Development ("HUD") also supports this interpretation of Section 1703(a)(1)(B).[20]  These regulations require property reports to contain a cover page with a prominent notice directed to purchasers, instructing them to "READ THIS PROPERTY REPORT BEFORE SIGNING ANYTHING."  24 C.F.R. § 1710.105(b) (emphasis in original); see also id. § 1710.105(c) (requiring property report covers to state:  "Federal law requires that you receive this Report prior to your signing a contract or agreement to buy or lease a lot in this subdivision.") (emphasis added).  HUD regulations also require developers to provide and retain a property report "purchaser receipt" form that states:  "We must give you a copy of this Property Report and give you an opportunity to read it before you sign any contract or agreement.  By signing this receipt, you acknowledge that you have received a copy of our Property Report."[21]  Id. § 1710.118(a), (b) (emphasis added).  This language confirms that – at least in HUD's view – developers are to provide property reports to purchasers, and not merely to agents of the purchaser.

For all of these reasons, this Court concludes that Defendant violated Section 1703(a)(1)(B) of ILSA by failing to furnish a copy of the property report to the Rais before they signed their purchase agreement.  Evidence that the property report was provided to the Rai

---

[20]  See Bacolitsas, 702 F.3d at 683 n.5 (concluding that ILSA is unambiguous but nonetheless finding it "significant" that HUD regulations supported holding).
[21]  Neither side has produced any such receipt from the Rais.

Plaintiffs' attorney is not sufficient to satisfy this requirement of the Act.  Accordingly, as to the

Rais, Defendant's motion to vacate will be granted, but its motion for summary judgment will be

denied.  Moreover, the Rai Plaintiffs' motion for summary judgment will be granted anew.  Their

purchase agreement is revoked, and they are entitled to a return of their deposit and to other

damages, attorneys' fees, and costs in an amount to be determined after additional briefing by the

parties.  See 15 U.S.C. §§ 1709(a), (c).

## V.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE REMAINING PLAINTIFFS

"Anticipatory repudiation [of a contract] occurs when, before the time for

performance has arisen, a party to a contract declares his intention not to fulfill a contractual

duty."  Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).  "Generally, a

party acts at his peril if, insisting on what he mistakenly believes to be his rights, he refuses to

perform his duty."  Restatement (Second) of Contracts § 250 cmt. d (1981); see also Paramount

Pictures Corp. v. Puzo, 12 Civ. 1268 (AJN), 2012 WL 4465574, at *4 (S.D.N.Y. Sept. 26, 2012)

("erroneous claim to a right not given by the contract, or an untenable interpretation of a

[party's] contractual rights or duties . . . constitutes repudiation only if it is done to avoid a

contractual obligation or if it is paired with a refusal to perform a contractual obligation")

(internal quotations omitted); IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp., 92

N.Y.2d 989, 993 (1998) ("insistence on an untenable interpretation of a key contractual

provision, and refusal to perform otherwise, constitute[s] an anticipatory breach of the contract").

When a party to a contract repudiates, the non-repudiating party may "(a) elect to treat the

repudiation as an anticipatory breach and seek damages for breach of contract, thereby

terminating the contractual relation between the parties, or (b) . . . continue to treat the contract

as valid and await the designated time for performance before bringing suit." Lucente, 310 F.3d at 258.

Here, it is undisputed that Plaintiffs Haskell, Benhamou, Bauer, and Ezzes each declared their intention to revoke their purchase agreements before the closing date.[22]  Defendant continued to treat the purchase agreements as valid, and notified each Plaintiff of the closing date.  (Def. R. 56.1 Stmt. ¶ 1; Apr. 8, 2010 Haas Decl. (Haskell Dkt. No. 22) ¶ 7, Exs. E-H) These Plaintiffs failed to close on the designated closing date, thereby breaching their obligations under their purchase agreements.  (Def. R. 56.1 Stmt. ¶¶ 2-3)  Accordingly, Defendant is entitled to summary judgment on its breach of contract counterclaim against Plaintiffs Haskell, Benhamou, Bauer, and Ezzes.

As a result of these Plaintiffs' breaches, under ILSA, Defendant is entitled to retain these Plaintiffs' deposits, less any interest earned while they have been held in escrow.[23] See 15 U.S.C. § 1703(d)(3).  Under the purchase agreements, Defendant is also entitled to reasonable attorneys' fees in an amount to be determined by the Court after further briefing by the parties.  (Agreements ¶ 32)

---

[22]  These Plaintiffs' revocation letters are dated between June 23, 2009 and July 20, 2009.  (Pltfs. R. 56.1 Stmt. ¶ 9; May 2, 2011 Moss Decl. (Haskell Dkt. No. 84), Exs. 5, 10, 15, 20).  On or about December 28, 2009, Defendant informed Plaintiffs that their closings were scheduled for February 1, 2010.  (Def. R. 56.1 Stmt. ¶ 1; Apr. 8, 2010 Haas Decl. (Haskell Dkt. No. 22) ¶ 7, Exs. E-H)
[23]  Section 1703(d)(3) authorizes the Court to award Defendant the greater of 15% of the purchase price of the units or Defendant's actual damages.  Defendant has not pled any damages. The deposits paid by each Plaintiff amount to exactly15% of the purchase price of their unit.  As noted above, any interest earned on the deposits must be returned to Plaintiffs.

## CONCLUSION

Defendant's motion to vacate is granted to the extent that this Court's March 2012 decision holds that the purchase agreements at issue violate 15 U.S.C. § 1703(d)(1), and that Plaintiffs Haskell Limited Inc., Jessica Benhamou, Garrett Bauer, and Marilyn Ezzes are entitled to summary judgment.  The Rais are granted summary judgment for the reasons set forth above. Defendant's motion for summary judgment on its breach of contract counterclaim is denied as to the Rais (09 Civ. 9586, Dkt. No. 63) but granted as to Haskell Limited Inc. (09 Civ. 9609, Dkt. No. 76), Benhamou (09 Civ. 9610, Dkt. No. 73), Bauer (09 Civ. 9611, Dkt. No. 75), and Ezzes (09 Civ. 9612, Dkt. No. 75).  The Clerk of the Court is directed to terminate the motions.

The following briefing schedule will apply to any application for damages, attorneys' fees, and costs by the Rais:

1.  The Rai Plaintiffs' motion is due on **October 11, 2013**.

2.  Defendant's opposition is due on **October 25, 2013**.

3.  The Rai Plaintiffs' reply, if any, is due on **November 1, 2013**.

The following briefing schedule will apply to any application for attorneys' fees by Defendant with respect to Plaintiffs Haskell, Benhamou, Bauer, and Ezzes:

1.  Defendant's motion is due on **October 11, 2013**.

2.  Plaintiffs' opposition is due on **October 25, 2013**.

3.  Defendant's reply, if any, is due on **November 1, 2013**.

Dated: New York, New York
      September 27, 2013

                    SO ORDERED.

                    _Paul G. Gardephe_
                    Paul G. Gardephe
                    United States District Judge