USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/31/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVIRAL RAI and SANGEETA RAI,

Plaintiffs and Counter-Defendants,

- against -

WB IMICO LEXINGTON FEE, LLC and GARY BARNETT,

Defendants and Counter-Claimants.

**MEMORANDUM OPINION & ORDER**

09 Civ. 9586 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiffs Aviral Rai and Sangeeta Rai (the "Rais" or the "Rai Plaintiffs") are purchasers of a condominium unit in "The Lucida," a condominium development in Manhattan sponsored and developed by Defendant WB Imico Lexington Fee, LLC ("WB Imico") and its principal, Gary Barnett. Having fully prevailed against the Rais in this litigation, WB Imico has moved for an award of attorneys' fees and costs pursuant to a fee-shifting provision in the Rais' purchase agreement.[1] (Dkt. No. 113)[2] WB Imico seeks $444,059.79 in attorneys' fees and costs incurred over six years of litigation against the Rais and four other condominium purchasers.

For the reasons stated below, WB Imico's motion for an award of attorneys' fees and costs will be granted.

---

[1] Although the Rai Plaintiffs also sued Gary Barnett, the instant application for attorneys' fees and costs is brought by WB Imico only. (See Notice of Motion (Dkt. No. 113) at 1; Def. Moving Br. (Dkt. No. 114) at 5)

[2] Unless otherwise indicated, all docket citations are to the docket in Rai v. WB Imico Lexington Fee, LLC, 09 Civ. 9586 (PGG). All page numbers referenced correspond to the page numbers designated by this District's Electronic Case Filing system.

## BACKGROUND

### I. FACTS[3]

The Lucida is a condominium development located at 151 East 85th Street, New York, New York. (Am. Cmplt. (Dkt. No. 7) ¶ 1) On November 12, 2007, the Rai Plaintiffs executed a purchase agreement for a condominium unit in The Lucida (the "Purchase Agreement") and paid WB Imico a deposit of $643,119.90 – constituting 15% of the purchase price of the unit – pursuant to that agreement. (Id. ¶¶ 20-21)

On November 10, 2009, within two years of executing the Purchase Agreement, the Rai Plaintiffs sent a notice to WB Imico seeking to rescind the Purchase Agreement due to WB Imico's alleged violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701-1720 ("ILSA"). (See id. ¶¶ 46, 50-79) In addition to the rescission of the Purchase Agreement, the Rai Plaintiffs sought the return of their deposit. (Id. ¶¶ 48-49, 55, 67, 77)

### II. PROCEDURAL HISTORY

The procedural history of this matter and related cases is long and complex.

On November 18, 2009, the Rai Plaintiffs commenced this action, alleging that WB Imico failed to provide them with a printed property report in advance of signing the Purchase Agreement, in violation of Section 1703(a)(1)(B) of the ILSA. (Cmplt. (Dkt. No. 1) ¶¶ 30-34) On the basis of this violation, the Rai Plaintiffs sought to rescind the Purchase Agreement and recover their $643,119.90 deposit. (Id. ¶¶ 48-49, 55, 67, 77) That same day, four other actions were filed in this District against WB Imico by other purchasers of

---

[3] The Court's factual statement is drawn from the Rai Plaintiffs' Amended Complaint. (Dkt. No. 7)

condominiums at The Lucida (the "Other Plaintiffs").[4] In all four actions, plaintiffs alleged that their purchase agreements violated (1) Section 1703(d)(1) of the ILSA, because the purchase agreements did not include a tax lot number for the purchased unit, and (2) Section 1703(d)(3) of the ILSA, because the purchase agreements did not clearly communicate certain purchaser rights in the event of the purchaser's default. (See 09 Civ. 9609 (Dkt. No. 1); 09 Civ. 9610 (Dkt. No. 1); 09 Civ. 9611 (Dkt. No. 1); 09 Civ. 9612 (Dkt. No. 1)) Like the Rai Plaintiffs, the Other Plaintiffs sought to rescind their purchase agreements and recover their deposits based on the alleged violations of the ILSA. (See id.)

On January 28, 2010, the Rais filed an Amended Complaint that repeated their ILSA, Section 1703(a)(1)(B) claim concerning the property report (Am. Cmplt. (Dkt. No. 7) ¶¶ 50-57), but added claims for violations of ILSA, Sections 1703(d)(1) (tax lot number) and 1703(d)(3) (rights in event of default). (Id. ¶¶ 58-79 ("Counts II and III")). The Rais' new claims mirrored those asserted by the Other Plaintiffs in their respective complaints. (Compare id., with 09 Civ. 9609 (Dkt. No. 1) ¶¶ 43-64; 09 Civ. 9610 (Dkt. No. 1) ¶¶ 43-64; 09 Civ. 9611 (Dkt. No. 1) ¶¶ 43-64; 09 Civ. 9612 (Dkt. No. 1) ¶¶ 43-64)) Because the Rai Plaintiffs' Amended Complaint now repeated both claims presented in the Other Plaintiffs' complaints – thereby raising common issues of law and fact – this Court's subsequent orders and opinions addressed all five cases together throughout the litigation.

---

[4] The four other actions are Haskell Limited Inc. v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9609 (PGG), Benhamou v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9610 (PGG), Bauer v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9611 (PGG), and Ezzes v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9612 (PGG). The plaintiffs in these four actions were all represented by the same lawyers. (See, e.g., Apr. 7, 2010 Def. Ltr. (Dkt. No. 10) at 2) The Rai Plaintiffs had different representation, however. (See id.)

On May 7, 2010, the Rai Plaintiffs moved for partial summary judgment on Counts II and III of their Amended Complaint, which addressed the ILSA claims founded on the failure to provide a tax lot number and to disclose rights in the event of default. (Dkt. Nos. 12, 13) The Other Plaintiffs jointly moved for summary judgment on these same claims, asserted in their own complaints. (See 09 Civ. 9609 (Dkt. Nos. 13, 19); 09 Civ. 9610 (Dkt. Nos. 12, 18); 09 Civ. 9611 (Dkt. Nos. 11, 17); 09 Civ. 9612 (Dkt. Nos. 14, 20)) The Rai Plaintiffs and Other Plaintiffs "submitted virtually identical briefs in support of their separate motions for summary judgment." (See Apr. 30, 2010 Rai Pltfs. Partial Sum. J. Reply Br. (Dkt. No. 25) at 5) The briefs raised the same legal arguments – that the condominiums were subject to the ILSA, that the purchase agreements violated Sections 1703(d)(1) and 1703(d)(3) of the ILSA, and that WB Imico's defense relating to the ILSA's "100-Lot Exemption" did not apply – and did so using largely identical language and citing the same case law. (See Rai Dkt. No. 13; see also 09 Civ. 9609 (Dkt. No. 19); 09 Civ. 9610 (Dkt. No. 18); 09 Civ. 9611 (Dkt. No. 17); 09 Civ. 9612 (Dkt. No. 20)) WB Imico cross-moved for summary judgment against all plaintiffs, as to all claims. Although WB Imico filed two sets of briefs – one set addressed to the Rai Plaintiffs and another set addressed to the Other Plaintiffs – the briefs were substantially the same, except that in Rai WB Imico also addressed Count I of the Rai Plaintiffs' Amended Complaint (failure to provide property report). (Compare Dkt. Nos. 19, 23, with 09 Civ. 9612 (Dkt. Nos. 25, 29))

On December 29, 2010, this Court denied the parties' cross-motions for summary judgment without prejudice. (Dkt. No. 33) The Court determined that the applicability of the ILSA's "100-Lot Exemption" was a key issue because – if the exemption applied – the ILSA did not cover plaintiffs' units. (Id. at 3-4) Because there were factual disputes about the number of units sold at The Lucida, summary judgment was not appropriate, and this Court directed the

parties to conduct additional discovery. (Id. at 5-8) Moreover, on March 2, 2011, the Second Circuit issued Bodansky v. Fifth on the Park LLC, 635 F.3d 75 (2d Cir. 2011), which addressed the applicability of the "100-Lot Exemption."

On May 23, 2011, the parties filed renewed cross-motions for summary judgment. As before, the Other Plaintiffs filed a joint brief, and the Rai Plaintiffs separately moved for partial summary judgment on their Amended Complaint's Count II (tax lot number) and Count III (rights in the event of default) – the same claims set forth in the Other Plaintiffs' complaints. (Dkt. Nos. 38, 43; see also 09 Civ. 9612 (Dkt. No. 57, 63)) In their Notice of Motion, the Rai Plaintiffs stated that they were "rely[ing] upon the Memorandum of Law filed by [the Other] Plaintiffs in 09-cv-9609, 09-cv-9610, 09-cv-9611, and 09-cv-9612." (Notice of Motion (Dkt. No. 38) at 1-2) WB Imico again cross-moved for summary judgment on all of plaintiffs' claims, including Count I of the Rai Plaintiffs' Amended Complaint (failure to provide property report). (Dkt. No. 49) WB Imico filed two substantially similar sets of moving briefs, which differed only to the extent that one set addressed the Rai Plaintiffs' separate claim under Count I (compare Dkt. No. 49, with 09 Civ. 9612 (Dkt. No. 48)). WB Imico filed a single reply brief – on the dockets of the Other Plaintiffs, not the Rai Plaintiffs – addressing together all of plaintiffs' joint arguments concerning the tax lot number and disclosure of default rights issues. (See 09 Civ. 9612 (Dkt. No. 54))

On March 19, 2012 – in a single order – this Court granted the motions of the Rai Plaintiffs and the Other Plaintiffs for summary judgment, and denied WB Imico's cross-motions for summary judgment. The Court concluded that the

> ILSA applies to condominium units, that the [ILSA's] "100-Lot Exemption" is not applicable [here], and that WB Imico's failure to include tax lot numbers in the purchase agreements constitutes a violation of [the] ILSA that permits Plaintiffs to rescind the purchase agreements and recover their deposits.

(Mar. 19, 2012 Order (Dkt. No. 52) at 3) The Court directed the parties to submit briefing concerning the plaintiffs' joint application for an award of attorneys' fees, costs, and pre-judgment interest under the ILSA. (Id. at 24 n.9; see also May 15, 2012 Pltfs. Joint Motion for Attorneys' Fees (Dkt. Nos. 55, 56))

On July 27, 2012, while the plaintiffs' joint motion for an award of attorneys' fees, costs, and interest was still pending, WB Imico filed a notice of appeal concerning the Court's March 19, 2012 Order. (See Dkt. No. 61; 09 Civ. 9612 (Dkt. No. 72))

On December 12, 2012, the Second Circuit issued Bacolitsas v. 86th & 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2013), in which purchasers of a condominium sought to revoke their purchase agreement under Section 1703(d)(1) of the ILSA, because it did not contain a "unit description clause." Bacolitsas, 702 F.3d at 681. The district court had granted the purchasers' motion for summary judgment, employing reasoning similar to that used in this Court's March 19, 2012 Order. See id. at 679. The Second Circuit rejected that analysis, however. Given the Second Circuit's ruling in Bacolitsas, this Court set a briefing schedule for WB Imico's anticipated motion to vacate the March 19, 2012 Order. (Dkt. No. 69; see also 09 Civ. 9612 (Dkt. No. 74)) In support of its motion to vacate, WB Imico filed one set of briefs applicable to both the Rai Plaintiffs and the Other Plaintiffs. (Compare Dkt. Nos. 63, 65, 66, with 09 Civ. 9612 (Dkt. Nos. 75, 77, 78)) The Rai Plaintiffs and Other Plaintiffs filed a joint brief opposing WB Imico's motion to vacate. (Dkt. No. 67)

On September 27, 2013, this Court granted WB Imico's motion to vacate "to the extent that this Court's March 2012 decision holds that the purchase agreements at issue violate [Section] 1703(d)(1) [of the ILSA]," and to the extent that this Court had held "that [the Other Plaintiffs] are entitled to summary judgment." (Sept. 27, 2013 Order (Dkt. No. 69) at 2-3) The

Court further granted WB Imico's cross-motion for summary judgment as to its counterclaims against the Other Plaintiffs. (Id.) However, the Court denied WB Imico's cross-motion for summary judgment as to the Rai Plaintiffs, and held that the Rai Plaintiffs were "entitled to summary judgment [on Count I of their Amended Complaint], because they were not provided with a copy of the property report for [their] condominium, in violation of [Section] 1703(a)(1)(B)" of the ILSA. (Id. at 3) The Rais thus – temporarily – prevailed on the one claim in their Amended Complaint that differed from the claims set forth in the Other Plaintiffs' complaints. This Court subsequently set briefing schedules for the Rais' application for attorneys' fees, costs, and pre-judgment interest under the ILSA, and for WB Imico's application for an award of attorneys' fees and costs against the Other Plaintiffs pursuant to their purchase agreements. (Id. at 23) As a result of the Court's resolution of WB Imico's motion to vacate, the still-pending appeal of this Court's March 19, 2012 Order was withdrawn as moot. (See Dkt. No. 72; 09 Civ. 9612 (Dkt. No. 83))

On November 4, 2013 – prior to submitting a brief in support of its application for an attorneys' fee award against the Other Plaintiffs – WB Imico entered into settlement agreements with each of the Other Plaintiffs. (See 09 Civ. 9609 (Dkt. No. 89); 09 Civ. 9610 (Dkt. No. 83); 09 Civ. 9611 (Dkt. No. 86); 09 Civ. 9612 (Dkt. No. 86)) In each settlement agreement, the parties agreed to the dismissal of the complaint and counterclaims, and "waive[d] any right either party may have, in law, equity or contract, to an award of costs or attorneys' fees in [the] action." (Id. ¶¶ 1, 3) Pursuant to the settlement agreements, WB Imico retained the Other Plaintiffs' deposits on the condominiums at issue (id. ¶ 2), but "did not recover any of the attorneys' fees it incurred in litigating" against the Other Plaintiffs. (Dolan Decl. (Dkt. No. 115) ¶ 16)

On January 17, 2014, while the Rai Plaintiffs' motion for an award of attorneys' fees was pending, WB Imico filed a notice of appeal from this Court's September 27, 2013 Order. (Dkt. No. 89) The Rai Plaintiffs filed a notice of cross-appeal on February 6, 2014. (Dkt. No. 90) The Second Circuit dismissed both appeals for lack of jurisdiction, because a final judgment had not been entered and no exception to the final judgment rule applied. (Dkt. No. 97)

On May 12, 2014, this Court denied the Rai Plaintiffs' motion for attorneys' fees and costs, but granted them pre-judgment interest on their deposit at the post-judgment statutory rate. (Dkt. No. 92) Judgment was entered on May 14, 2014. (Dkt. No. 93) WB Imico filed a notice of appeal, and the Rai Plaintiffs cross-appealed. (Dkt. Nos. 95, 96)

On September 21, 2015, the Second Circuit issued an opinion that (1) affirmed the judgment of this Court that WB Imico did not violate Section 1703(d)(1) of the ILSA (failure to provide tax lot number); (2) reversed the judgment of this Court that WB Imico violated Section 1703(a)(1)(B) by not delivering a property report to the Rais directly; and (3) held that WB Imico was entitled to retain the Rais' deposit on the condominium unit, as well as any interest accrued thereon, as a result of the Rais' breach of the Purchase Agreement. Rai v. WB Imico Lexington Fee, LLC, 802 F.3d 353, 370 (2d Cir. 2015). The Second Circuit remanded the case for further proceedings.

## III. WB IMICO'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

On March 17, 2016, WB Imico moved for an award of $444,059.79 in attorneys' fees and costs pursuant to a fee-shifting provision in the Rai Plaintiffs' Purchase Agreement. (Dkt. No. 113; Def. Moving Br. (Dkt. No. 114) at 5-6) This figure represents attorneys' fees and

costs WB Imico incurred in defending against the claims of all five sets of plaintiffs – both the Rai Plaintiffs and the Other Plaintiffs. (Id. at 15-16)

The Rai Plaintiffs oppose WB Imico's motion, contending that it cannot recover attorneys' fees and costs "allegedly incurred in defending against five separate matters, involving five separate contracts, and five separate plaintiffs." (Pltf. Opp. Br. (Dkt. No. 119) at 5) The Rai Plaintiffs further contend that WB Imico's application should be denied because the fee-shifting provision in the Rais' Purchase Agreement (1) "does not make the Rai Plaintiffs jointly and severally liab[le] for all fees incurred . . . on any and all related agreements," and (2) makes the Rai Plaintiffs "only responsible for their distinct, identifiable, and unique attorneys' fees," which WB Imico cannot now specify, because defense counsel commingled the billing records applicable to work against the Rai Plaintiffs and work against the Other Plaintiffs. (Id. at 5-6, 14-16) The Rai Plaintiffs argue that the fee application also fails because WB Imico has not "submit[ted] any evidence that the work described in th[e] fee application was reasonable or necessary, or that the rates charged are reasonable." (Id. at 5, 16-24)

## DISCUSSION

### I. WB IMICO IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES

WB Imico's application for an award of attorneys' fees and costs is premised on a fee-shifting provision in the Rai Plaintiffs' Purchase Agreement. (Def. Moving Br. (Dkt. No. 114) at 5-6; Dolan Decl. (Dkt. No. 115) ¶¶ 2-3) Paragraph 32 of the Rai Plaintiffs' Purchase Agreement provides that

> [the purchaser] shall be obligated to reimburse [WB Imico] for any legal fees and disbursements incurred by [WB Imico] in defending [its] rights under this Agreement or, in the event [the purchaser] defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing [the purchaser's] obligations hereunder.

(Dolan Decl. (Dkt. No. 115) ¶ 3)

The Rai Plaintiffs argue that "the express language of the fee shifting [provision] in the Rai Plaintiffs' [Purchase] Agreement does not . . . make the Rai Plaintiffs responsible for fees [related to the] [O]ther [P]laintiffs." (Ptlf. Opp. Br. (Dkt. No. 119) at 10) The Rai Plaintiffs further argue that, "[a]s a matter of contract, . . . [they] are only responsible for their distinct, identifiable and unique attorneys' fees[, which] . . . WB Imico has failed to identify." (Id. at 16)

**A. Attorneys' Fee Awards Based on Contract**

"Under the 'American Rule,' it is axiomatic that 'attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" Matsumura v. Benihana Nat. Corp., No. 06 Civ. 7609 (NRB), 2014 WL 1553638, at *3 (S.D.N.Y. Apr. 17, 2014) (quoting Summit Valley Indus., Inc. v. United Bd. of Carpenters & Joiners, 456 U.S. 717, 721 (1982)). "Parties may override the presumption by contractually agreeing to permit recovery of attorneys' fees, [however,] in which case 'a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law.'" Id. (quoting McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993)). In New York, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). Indeed, the Second Circuit has stated that "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." McGuire, 1 F.3d at 1313.

Here, the Rai Plaintiffs' Purchase Agreement plainly provides that they "shall be obligated to reimburse [WB Imico] for any legal fees and disbursements incurred by [WB Imico] in defending [its] rights under th[e] [Purchase] Agreement." (Dolan Decl. (Dkt. No. 115) ¶ 3)

This language is "sufficiently clear" to permit WB Imico to recover attorneys' fees and costs it incurred in litigating against the Rai Plaintiffs. See NetJets Aviation, 537 F.3d at 175.

The Rai Plaintiffs do not challenge the validity of the fee-shifting provision, but instead dispute whether this provision permits recovery of fees and costs WB Imico incurred in litigating against the Other Plaintiffs, who each sued WB Imico under separate purchase agreements. (See Pltf. Opp. Br. (Dkt. No. 119) at 10, 16) Accepting the Rai Plaintiffs' assertion that the fee-shifting provision in their Purchase Agreement only permits the reimbursement of fees and costs "incurred by [WB Imico] in defending [its] rights under this Agreement" (Dolan Decl. (Dkt. No. 115) ¶ 3) (emphasis added), WB Imico is seeking no more here.

As discussed above, the Rai Plaintiffs asserted the same two claims raised by the Other Plaintiffs – as well as an additional third claim – and litigated all three claims on the same briefing schedule as the Other Plaintiffs. Moreover, throughout the litigation, the Rai Plaintiffs filed briefs nearly identical to those filed by the Other Plaintiffs, explicitly joined in the briefs filed by the Other Plaintiffs, or filed a joint brief with the Other Plaintiffs. (See, e.g., Apr. 30, 2010 Rai Pltf. Partial Sum. J. Reply Br. (Dkt. No. 25) at 5 (acknowledging, in connection with first round of summary judgment briefing, that the Rai Plaintiffs and the Other Plaintiffs had "submitted virtually identical briefs in support of their separate motions for summary judgment," and "adopt[ing] and incorporat[ing] by reference the brief submitted on behalf of the Other [Plaintiffs] in reply to WB Imico's opposition to [the Rai Plaintiffs'] and the Other Plaintiffs' motion relating to WB Imico's violation of [ILSA] § 1703(d) and its cross-motion on the same issue"); May 2, 2011 Rai Pltfs. Notice of Motion for Renewed Partial Sum. J. (Dkt. No. 38) at 1-2 (stating that in support of their renewed motion for summary judgment, the Rai Plaintiffs "shall rely on the Memorandum of Law filed by the Plaintiffs in 09-cv-9609, 09-cv-9610, 09-cv-9611,

and 09-cv-9612, Plaintiffs' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (the 'Material Facts') and Appendix to the Material Facts"); May 23, 2011 Rai Pltfs. Opp. Sum. J. Br. (Dkt. No. 43) at 5 (in connection with the Rai Plaintiffs' opposition to WB Imico's renewed motion for summary judgment, stating that the Rai "Plaintiffs hereby adapt[] and incorporate[] the Other Plaintiffs' brief dated and filed May 23, [2011] in opposition to WB Imico's motion for summary judgment"); May 15, 2012 Joint Attorneys' Fees Br. (Dkt. No. 56) at 3, 11 (joint brief filed by Rai Plaintiffs and Other Plaintiffs in support of motion for attorneys' fees, costs, and interest, and referring to "the[] consolidated actions"); Jan. 25, 2013 Joint Opp. to Motion to Vacate (Dkt. No. 67) at 2 ("Joint Memorandum of Law" submitted by Rai Plaintiffs and Other Plaintiffs in opposition to WB Imico's motion to vacate))

Similarly, in addressing the Rai Plaintiffs' arguments, WB Imico consistently referred the Court to briefing submitted in connection with the Other Plaintiffs' motions (see, e.g., Apr. 8, 2010 Def. Opp. to Partial Sum. J. (Dkt. No. 19) at 16 ("rather than repeating their briefing on this point, Defendants respectfully refer . . . the Court to Point II [and Point III] of Defendants' memorandum of law in the Related Actions, dated April 8, 2010"); May 7, 2010 Def. Sum. J. Reply Br. (Dkt. No. 23) at 5-6 ("rely[ing] on Defendants' papers in the Related Actions"); May 2, 2011 Def. Renewed Sum. J. Moving Br. (Dkt. No. 49) at 18-19 (in connection with WB Imico's renewed motion for summary judgment, "respectfully refer[ring] . . . the Court to Point II and [Point III] of Defendant's memorandum of law in the Related Actions, dated May 2, 2011")), or filed one brief directed to both the Rai Plaintiffs and the Other Plaintiffs. (See, e.g., June 5, 2012 Def. Opp. Attorneys' Fees (Dkt. No. 59) at 5 (addressing in one brief the plaintiffs' joint brief in support of application for attorneys' fees, costs, and interest); Def.

Motion to Vacate Br. (Dkt. Nos. 65, 66) ("Joint Motion to Vacate and for Summary Judgment" applicable to both Rai Plaintiffs and Other Plaintiffs))

As to the appeals, the first set of appeals were consolidated in the Second Circuit (see Rai v. WB Imico Lexington Fee, LLC, No. 12-3190 (Dkt. No. 34)), while the second appeal involved only the Rai Plaintiffs. See Rai v. WB Imico Lexington Fee, LLC, 802 F.3d 353 (2d Cir. 2015).

In sum, because of the common issues of law and fact, all of the briefing WB Imico addressed to the "Other Plaintiffs" was directly applicable to the Rai Plaintiffs. Indeed, in briefing that addressed the Rai Plaintiffs's claims, WB Imico either directed the Court to its briefing concerning the Other Plaintiffs, or filed one brief that addressed the arguments of both the Rai Plaintiffs and the Other Plaintiffs. Accordingly, all of the attorneys' fees and costs WB Imico incurred during these litigations necessarily arose from "defending its rights under [the Rai Plaintiffs' Purchase] Agreement."

In cases involving the litigation of common claims arising from separate but similar contracts, courts have permitted the recovery of all legal fees from a single party. See Omni Consulting Group, Inc. v. Marina Consulting, No. 01 Civ. 511A, 2011 WL 815101, at *2 (W.D.N.Y. Mar. 2, 2011) (holding co-defendants jointly and severally liable for attorneys' fee award where defendants had litigated claims under similar contracts that contained identical fee-shifting provisions), aff'd sub nom. Omni Consulting Grp., Inc. v. Pilgrim's Pride Corp., 488 F. App'x 478 (2d Cir. 2012); DLJ Mortg. Capital, Inc. v. Sunset Direct Lending, LLC, No. 07 Civ. 1418 (HB) (THK), 2008 WL 4489786, at *2 (S.D.N.Y. Oct. 6, 2008) (holding co-defendants jointly and severally liable for entire attorneys' fee award where each defendant, pursuant to separate but similar contracts, was liable for "any losses, damages, legal fees, and related costs

sustained that are in any way related to" the breach of that contract); cf. Goldberg v. Blue Ridge Farms, Inc., No. 04 Civ. 5098, 2005 WL 1796116, at *2 (E.D.N.Y. July 26, 2005) ("Where both defendants are liable on identical theories of liability and the dispute centers around the same facts, joint and several liability for attorneys' fees is reasonable and appropriate.").

Accordingly, given the common questions of law and fact and the briefing practices in this case, the fee-shifting provision in the Rai Plaintiffs' Purchase Agreement authorizes WB Imico to recover the attorneys' fees and costs it incurred in defending against the Rai Plaintiffs and Other Plaintiffs' common claims. The Court next considers whether joint and several liability – as opposed to apportionment – is appropriate in this case.

**B. Joint and Several Liability**

The Rai Plaintiffs argue that they should not be held jointly and severally liable for an award of attorneys' fees and costs, but instead should "only [be] responsible for their distinct, identifiable and unique attorneys' fees." (Pltf. Opp. Br. (Dkt. No. 119) at 16) The Rai Plaintiffs further argue that because defense counsel "co-mingle[d] . . . billing records and cannot now segregate the time charges for the Rai Plaintiffs from the [O]ther [Plaintiffs]," the motion for attorneys' fees and costs should be denied in its entirety. (Id. at 5)

**1. Applicable Law**

"The allocation of fee liability is a matter committed to the district court's discretion." Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990) (partially abrogated on other grounds by Buckhannon Bd. and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001)) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1982)). In determining how to allocate attorneys' fees, "district courts have appropriately considered a variety of factors . . . including the relative culpability of the parties . . . and the

proportion of time spent litigating against each defendant." Id. "[T]he district court may allocate the fee award between the responsible parties, . . . or it may hold the responsible parties jointly and severally liable for the fee award. The only limitation [on joint and several liability] is . . . the pre-existing background of substantive liability rules." Id. The court "should 'make every effort to achieve the most fair and sensible solution that is possible.'" Id. (quoting Grendel's Den Inc. v. Larkin, 749 F.2d 945, 959-60 (1st Cir. 1984)). Accordingly, "although apportionment may in some cases be a more equitable solution, there is no rule in this circuit that requires it whenever possible." Id.

**2. Analysis**

As demonstrated above, because of the common questions of law and fact, the work done by defense counsel in addressing the Other Plaintiffs' claims was part and parcel of addressing the Rai Plaintiffs' claims. As a result, and as shown above, defense counsel either filed substantially similar briefs in addressing plaintiffs' claims (compare Dkt. Nos. 19, 23, 49, with 09 Civ. 9612 (Dkt. No. 25, 29, 48)), or filed joint briefs addressed to all plaintiffs. (See Dkt. Nos. 59, 65, 66) The only substantial difference in the briefing was as to the Rai Plaintiffs' property report claim, which was unique to their case.[5]

Given these circumstances, joint and several liability is appropriate. The Second Circuit has instructed that a district court need not apportion attorneys' fees "on the basis of [the] time spent . . . litigating against each [opposing party]" where "much of the balance of the [movant's] time was devoted to activities involving [the opposing parties jointly]." See Koster, 903 F.2d at 140. Here, of course, "all of the legal arguments made by [defense] counsel [as to

[5] Moreover, defense counsel represents that "[w]here any . . . work related exclusively to a case other than the Rai action, [counsel] ha[s] deleted those [billing] entries from the requested award." (Dolan Decl. (Dkt. No. 115) ¶ 22)

the Other Plaintiffs] applied with equal force" to the Rai Plaintiffs. Rubenstein v. Advanced Equities, Inc., No. 13 Civ. 1502 (PGG), 2015 WL 585561, at *5 (S.D.N.Y. Feb. 10, 2015) (imposing joint and several liability for fee award despite objection that promissory notes did not make each debtor liable for fees incurred collecting monies owed by other debtors). "Stated another way, all of [defense counsel's] work performed on the cross-motions would have been necessary whether or not the [Other Plaintiffs] were parties to this action." Id.

In such cases, "and in view of [the] desire to avoid transforming the 'consideration of a fee petition [into a] "second major litigation,"' . . . [a] district court's imposition of joint and several fee liability [is] a proper exercise of its discretion." Koster, 903 F.2d at 140 (quoting Webb v. Dyer Cnty. Bd. of Ed., 471 U.S. 234, 244 n.20 (1985)); see also Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000) (holding defendant liable for "all the [legal] work that assisted [the movant] in [its] case," because "work done solely in relation [to a co-defendant] . . . actually aided [the movant] in [its] case against [the defendant]"). Therefore, the fact that WB Imico incurred fees in connection with legal work that addressed all plaintiffs' claims supports the imposition of joint and several liability.[6] See Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., No. 08 Civ. 3036 (FB) (RML), 2010 WL 456870, at *3 n.3 (E.D.N.Y. Feb. 3, 2010) ("Having reviewed plaintiffs' counsel's billing records, the Court concludes that it is not possible to apportion the

---

[6] After the Other Plaintiffs settled their claims with WB Imico in November 2013, WB Imico continued to litigate against the Rai Plaintiffs over their separate claim that WB Imico had not provided a property report, in violation of Section 1703(a)(1)(B) of the ILSA. Any fees and costs related to this issue are, of course, attributable solely to the Rai Plaintiffs. While the Rai Plaintiffs argue that they are not liable even for these fees – because WB Imico "failed to separate out the time billed . . . after [November] 2013" – the time billed after November 2013 is readily apparent from the billing records. (See Dolan Decl. (Dkt. 115) Exs. 1, 2; see also Supp. Dolan Decl. (Dkt. No. 117) ¶¶ 2-3, Exs. 1, 2)

[litigation] work performed on particular [employee-benefit] funds; therefore, [the individual defendant] will be liable for the entire award."). In sum, the "relative culpability" or responsibility of the plaintiffs in causing WB Imico to incur attorneys' fees is the same. See Stavitsky v. Bd. of Elections in City of N.Y., 198 F. Supp. 2d 271, 275 (E.D.N.Y. 2002) (applying joint and several liability "'where the action . . . of several [parties] produces a single indivisible injury'" arising from legal fees and costs incurred in defending against suit (quoting Koster, 903 F.2d at 140)).

Accordingly, this Court concludes that joint and several liability is appropriate here.[7] Having determined that the Rai Plaintiffs are liable for WB Imico's attorneys' fees and

[7] Joint Venture Asset Acquisition v. Bhogaonker, No. 87 Civ. 5308 (RWS), 1991 WL 254556, at *5 (S.D.N.Y. Nov. 19, 1991), cited by the Rai Plaintiffs (see Pltf. Opp. Br. (Dkt. No. 119) at 14-15), is not to the contrary. In that case, plaintiff sought an attorneys' fee award against defendants, jointly and severally, based on a fee-shifting provision in the defendants' respective promissory notes. Joint Venture Asset, 1991 WL 254556, at *2-3. The court found that "[a]lthough the [movant] litigated its claims against all of the [defendants] in a consolidated manner, each of the claims [was] based on a separate Note and each for a distinct, identifiable and unique amount." Id. at *5. Moreover, defendants contended that joint and several liability was "unjust . . . in view of the fact that the aggregate figure [of attorneys' fees] . . . vastly exceed[ed] the amounts of the individual obligations enforced through th[e] litigation." Id. The court agreed that given these circumstances, joint and several liability was "unfair." Id. at *5.

The circumstances that animate Joint Venture Asset are not present here. WB Imico's requested award of $444,059.79 in attorneys' fees and costs is less than the $643,119.90 deposit whose return the Rai Plaintiffs sought in this litigation, and a small fraction of the total price of the condominium that was the subject of the Purchase Agreement. (See Am. Cmplt. (Dkt. No. 7) ¶ 21) Moreover, the Rai Plaintiffs brought the claims that are the subject of this litigation – including an additional claim not pursued by the Other Plaintiffs – and continued the litigation for seven years. Given these circumstances, the application of joint and several liability for attorneys' fees and costs is not unjust.

Finally, to the extent that the Rai Plaintiffs contend that Joint Venture Asset stands for the proposition that joint and several liability for attorneys' fees is not appropriate in cases involving separate contracts, more recent cases have not adopted that view. See Omni Consulting Group, 2011 WL 815101, at *2; DLJ Mortg. Capital, 2008 WL 4489786, at *2.

costs, and may be held liable on a joint and several basis, the remaining issue is the appropriate amount of the fee award.

## II. CALCULATION OF A REASONABLE ATTORNEYS' FEE AWARD

Schlam Stone & Dolan, LLP ("SS&D") has represented WB Imico for more than seven years in this case. WB Imico seeks $426,901.25 in attorneys' fees, reflecting 984.1 hours of work performed by three partners, one counsel, three associates, and nine paralegals. (Dolan Decl. (Dkt. No. 115) ¶¶ 30-31, 35-36)

### A. Applicable Law

"As a general matter of New York law, . . . when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987); see Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (same). "However, notwithstanding th[is] general proposition . . . , the amount to be awarded as 'an attorney's fee is within the discretion of the court.'" Terra Energy & Resources Techs., Inc. v. Terralinna Pty. Ltd., No. 12 Civ. 1337 (KNF), 2014 WL 6632937, at *4 (S.D.N.Y. Nov. 24, 2014) (quoting Gamache v. Steinhaus, 7 A.D.3d 525, 527 (2d Dep't 2004)). Indeed, "'[w]hen determining a fee award based upon a contractual attorneys' fees agreement between the parties . . . courts have "broad discretion" and need not follow a specific formula. As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees.'" Union Cent. Life Ins. Co. v. Berger, No. 10 Civ. 8408 (PGG), 2013 WL 6571079, at *2 (S.D.N.Y. Dec. 13, 2013) (quoting Clarendon Nat'l Ins. Co. v. Advance Underwriting Managers Agency, Inc., No. 06 Civ. 15361 (BSJ), 2011 WL

6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004))).

In determining whether a requested fee award is reasonable, the starting point is the calculation of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley, 461 U.S. at 433. "In determining a reasonable rate, a court 'may rely on its own knowledge of comparable rates charged by lawyers in the district.'" Merck Eprova AG v. Brookstone Pharm., LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that we and other courts have identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original). Courts also consider "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively . . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at 184.

"Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of [the movant's] success in the litigation." Robinson v. City of New York, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009). A court need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional

representation'" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 164 n.8 (2d Cir. 1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major litigation." Hensley, 461 U.S. at 437. The burden is ultimately on the movant to demonstrate the reasonableness of the hours spent and rates asserted. See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).

**B. Hourly Rates**

WB Imico seeks $426,901.25 for 984.1 hours spent litigating against the Rai Plaintiffs and Other Plaintiffs. (Dolan Decl. (Dkt. No. 115) ¶¶ 22-24, 35-36) The attorneys working on the litigation – three partners, one counsel, and three associates – billed $415,850.75 for 902.8 hours of work. (Id. ¶¶ 30, 35)

Partner and counsel billings amount to 845.9 hours, representing nearly 86% of the total hours worked.[8] (See id. ¶¶ 30, 32) Almost all of those hours were billed by two partners, Thomas Kissane and Richard Dolan. Kissane and Dolan billed 599.9 hours and 237.6 hours, respectively, at rates between $427.50 and $562.50 per hour.[9] (Id.) Partner Harvey Stone

---

[8] When the hours worked by paralegals are excluded, partner and counsel billings account for nearly 94% of SS&D's total attorney hours. (See Dolan Decl. (Dkt. No. 115) ¶¶ 32, 35)

[9] The billing records show that, during the many years of litigation, both Kissane and Dolan increased their hourly rates – Kissane from $427.50 to $517.50, and Dolan from $517.50 to $562.50. (See Dolan Decl. (Dkt. No. 115) ¶ 30, Ex. 1)

billed 3.9 hours at the same rates. (Id.) Counsel Bradley Nash billed 4.5 hours at a rate of $427.50 per hour. (Id.)

SS&D associates account for about 6% of SS&D's total hours. Associate David Abrams billed 52 hours at rates between $292.50 and $360 per hour. (Id.) Associates Samuel Butt and Niall O'Murchadha billed 2.2 hours and 2.7 hours, respectively, at the same rates. (Id.) SS&D's nine paralegals account for the remaining 8% of SS&D's total hours, having billed 81.3 hours at $135 per hour. (See id. ¶¶ 31, 35)

The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a "reasonable, paying client would be willing to pay."[10] Arbor Hill, 522 F.3d at 184. "[D]istrict courts should use the 'prevailing [hourly rate] in the community' in calculating . . . the presumptively reasonable fee." Id. at 190 (second alteration in original). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). More specifically, courts should consider the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson,

---

[10] The Rai Plaintiffs do not argue that SS&D's billing rates are unreasonable, but rather that WB Imico "has not proffer[ed] any evidence to support the reasonableness of the rates charged." (Pltf. Opp. Br. (Dkt. No. 119) at 17-18 (citing Adorno v. Port Authority of N.Y. & N.J., 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010)) (emphasis in original) WB Imico has offered support for the reasonableness of its rates, however. In its moving brief, WB Imico cites case law concerning hourly rates deemed reasonable by other courts in this District, and also cites to prior decisions of this Court on motions for attorneys' fees in other ILSA actions involving WB Imico. (See Def. Moving Br. (Dkt. No. 114) at 8-10) Moreover, the Second Circuit has stated that "[a] district court may also use its knowledge of the relevant market when determining the reasonable hourly rate." McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 (2d Cir. 2006). Accordingly, the Court finds no deficiency in WB Imico's application as to billing rates.

465 U.S. 886, 896 n.11 (1984)). In determining what rates are reasonable, a court may also rely on evidence as to the rates counsel typically charges, Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district." Morris, 343 F. Supp. 2d at 245 (citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682 (LAP), 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)).

Here, SS&D's partners and counsel are highly experienced in complex commercial litigation. Stone and Dolan have each practiced law for four decades, while Kissane has more than twenty-five years' experience. (Dolan Decl. (Dkt. No. 115) Ex. 4) Nash has more than a decade of experience. (Id.) As to the associates, O'Murchadha graduated from law school in 2003, Butt graduated from law school in 2005, and Abrams graduated from law school in 2007. (Id. ¶ 34, Ex. 4)

The billing rates at issue here are within the range of rates that have been approved by courts in this District. See, e.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), adopted 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (noting that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals," and citing Edmonds v. Seavey, No. 08 Civ. 5646 (HB) (JCF), 2009 WL 1598794, at *2 (S.D.N.Y. June 5, 2009), aff'd, 2009 WL 2150971 (S.D.N.Y. July 20, 2009), and RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231 (DFE), 2005 WL 2105541, at *2 (S.D.N.Y. Sept. 1, 2005)); In re AOL Time Warner S'holder Derivative Litig., No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) ("Counsel use hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners.

These rates, though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high profiles."). The Court concludes that the rates SS&D charged for its work in this litigation are reasonable.

SS&D charged $135 per hour for the work done by its paralegals. This rate is likewise within the range that other judges in this District have found reasonable. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (finding reasonable a $140 per hour rate for paralegal); N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010) ($125 per hour is a reasonable hourly rate for paralegal services); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (same).

## C. Staffing and Time Expended

### 1. Applicable Law

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

While "[t]he use of multiple attorneys . . . is not unreasonable per se," Simmonds v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16,

2008) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984)) (alteration in original), assigning numerous attorneys to a simple and straightforward matter presents a serious risk of inefficiency, duplication, and unnecessary billing. See id. at *6-7. As the Second Circuit has recognized, however,

> [i]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion . . . . [A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

New York State Ass'n for Retarded Children, 711 F.2d at 1146. The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89 Civ. 1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and outside counsel").

**2. The Rai Plaintiffs' Objections to the Hours Billed**

In opposing WB Imico's motion, the Rai Plaintiffs argue that the fees sought are "unreasonable, duplicative, and, most of all, excessive," because "from [the case's] inception, all of the time billed [by SS&D] was for work performed on **all of the Related Actions**" – that is, in defending against the Rai Plaintiffs and the Other Plaintiffs. (Pltf. Opp. Br. (Dkt. No. 119) at 18) (emphasis in original) The Rai Plaintiffs contend that WB Imico has not shown that a "reasonable number of hours [were] expended on **this** litigation" and impermissibly seeks recovery for hours billed "as a result of **five separate actions on five separate agreements**." (Id. at 20-21) (emphasis in original) These arguments are rejected for the reasons discussed at length above.

The Rai Plaintiffs also challenge specific billing entries as examples of "duplicity and excess" and "time that was not 'reasonably expended' on this matter." (Id. at 22) Those objections are listed below:

(1) Between January 14, 2010 and January 19, 2010, SS&D billed 8.40 hours, or $3,591, for work performed on a proposed injunction application that did not relate to the Rai matter.

(2) Between January 28, 2010 and January 29, 2010, SS&D billed 16.1 hours, or $5,217.75, for work performed to "review and revise answers in ILSA-related actions" or "revisions to answers on Lucida matters" or "complete, file answers in Lucida matters." The Rai Plaintiffs advised at the January 21, 2010 conference with this Court that the Rai Plaintiffs would be filing an Amended Complaint. The Rai Plaintiffs filed the Amended Complaint on January 29, 2010. The work performed prior to the filing of the Amended Complaint did not pertain to the Rai Plaintiffs.

(3) Between February 8, 2010 through February 12, 2010, SS&D billed 13.3 hours, or $4,442.75, to draft an answer to the Rai [Plaintiffs'] Amended Complaint, an answer that was substantially similar to the Answers already filed in the other related matters. This appears on multiple invoices. Overall, four attorneys worked on the Answer.

(4) Between March 5, 2010 through May 7, 2010, SS&D billed at least 207.4 hours, or $83,620.50, to draft WB Imico's response and cross-motion to **all Plaintiffs['] (plural) joint motion** for summary judgment, and reply papers thereto.

(5) On September 28, 2010, SS&D billed 4.5 hours, or $2,328.75, to revise a letter to [this Court] and to attend oral argument in another matter – the "20 Pine St. case."

(6) Between December 8, 2010 and December 21, 2010, SS&D billed 18.6 hours, or $7,659.00, to review and revise a **joint** letter with all Plaintiffs' (plural) counsel to [this Court].

(7) Between March 2, 2011 and March 31, 2011, SS&D billed 9.5 hours, or $4,916.25, to attend a conference with [this Court], review **Plaintiffs[']** (plural) statement of undisputed facts, revisions to response to **Plaintiffs[']** (plural) statement of undisputed facts, and for conferences to discuss "common plan" issues.

(8) Between April 25, 2012 and June 13, 2012, SS&D billed 58.7 hours, or $26,451.00, to oppose an attorneys' fee motion. The sole issue was whether

> attorneys' fees should be awarded based upon the statute. The quantum of fees was not at issue, nor were bills submitted for this analysis.

(Id. at 22-24) (emphasis in original)

As to the first objection, the Court agrees that fees associated with the proposed preliminary injunction should be deducted. WB Imico contends that this work was done in anticipation of a motion for a preliminary injunction "that counsel for [the Other] Plaintiffs . . . informed [SS&D] they were planning to file with this Court." (Supp. Dolan Decl. (Dkt. No. 117) ¶ 7) Although the application for a preliminary injunction was never filed, WB Imico argues that "such motions often proceed on an accelerated basis" and, had it been filed, it would have concerned the Rai Plaintiffs. (Id.) This Court is obligated to ensure, however, that a fee award reflects only work that was "necessary to the litigation." Sullivan, 1993 WL 147457, at *3. The Court concludes that hours billed in anticipation of a motion that was never filed should be deducted from the fee award.

As to the second and third objections, the Court finds no impropriety. Although the Rai Plaintiffs filed the Amended Complaint after SS&D prepared and filed answers to the Other Plaintiffs' complaints, the Rai Plaintiffs amended their complaint in order to add two claims identical to those asserted by the Other Plaintiffs. (See Am. Cmplt. (Dkt. No. 7); see also Supp. Dolan Decl. (Dkt. No. 117) ¶ 8) The work done preparing and filing answers to the Other Plaintiffs' complaints was both necessary and related to the Rai Plaintiffs. Furthermore, the additional time billed by SS&D in responding to the Rai Plaintiffs' Amended Complaint does not appear excessive. Acknowledging that the Answer "was substantially similar to the Answers already filed in the other related matters" (Pltf. Opp. Br. (Dkt. No. 119) at 23), the Amended Complaint asserts an additional claim under the ILSA for failing to provide a property report, which raised separate factual and legal issues applicable to the Rais only.

As to the fourth, sixth, and seventh objections – which are based solely on the argument that the billing entries include time relating to the Other Plaintiffs – these objections fail for reasons already stated.

In their fifth objection, the Rai Plaintiffs challenge time billed by SS&D on September 30, 2010 to attend oral argument before Judge Paul A. Crotty on cross-motions for summary judgment in another ILSA case, Nu-Chan, LLC v. 20 Pine Street LLC, No. 09 Civ. 477 (PAC). WB Imico contends that attendance at this court session and others was necessary to stay "informed about how the judges in the Southern District and the Second Circuit were viewing" issues relating to the ILSA. (Supp. Dolan Decl. (Dkt. No. 117) ¶ 10) This Court agrees. This case involved a complex statute that had not previously been the subject of extensive judicial analysis. District courts offered varying interpretations of certain issues arising under the ILSA, see, e.g., Bodansky v. Fifth on the Park Condo, LLC, 732 F. Supp. 2d 281 (S.D.N.Y. 2010); Griffith v. Steiner Williamsburg, LLC, 760 F. Supp. 2d 345 (S.D.N.Y. 2010), and the Second Circuit repeatedly rejected district courts' interpretations of the Act. See, e.g., Bacolitsas v. 86th and 3rd Owner, LLC, 702 F.3d 673 (2d Cir. 2012); Bodansky v. Fifth on the Park Condo, LLC, 635 F.3d 75 (2d Cir. 2011). Accordingly, time spent following these developments was "reasonably needed to prevail in the litigation." New York State Ass'n for Retarded Children, 711 F.2d at 1146.

As to the eighth objection – which concerns 58.7 hours billed in opposing the Rai Plaintiffs' motion for attorneys' fees, costs, and pre-judgment interest – the Court agrees that a reduction in the hours billed is necessary. WB Imico argues that the pre-judgment interest issue arose in an area of "still-developing law." (Dolan Decl. (Rai Dkt. No. 117) ¶ 13) Even accepting that argument, the many hours of editing performed partners Kissane and Dolan

appears excessive. (See Dolan Decl. (Dkt. No. 115) Ex. 1) The Court concludes that a 30% reduction in the hours spent by Dolan and Kissane in opposing the motion is appropriate.[11]

### 3. The Reasonableness of the Hours Billed

Although seven attorneys billed time on this matter over a six year period, nearly all of the 902.8 attorney hours billed reflects work performed by two partners – Thomas Kissane and Richard Dolan – and one associate – David Abrams. (See Dolan Decl. (Dkt. No. 115) ¶ 32) The work appears to have been performed in an efficient manner and duplication of effort is not apparent from the billing records. While Kissane and Dolan performed the lion's share of the work, the complexity and novelty of the legal issues warranted their involvement, and the Rai Plaintiffs have not argued otherwise.[12] Given the voluminous motion papers and multiple appeals filed over more than six years of litigation, the Court concludes that the hours billed are reasonable.

After deducting fees related to (1) the preliminary injunction motion that was never filed – a reduction of $3,591; and (2) the Rai Plaintiffs' motion for attorneys' fees, costs, and pre-judgment interest – a reduction of $8,058.14, the Court concludes that WB Imico is entitled to recover $415,252.11 in attorneys' fees.

---

[11] In opposing the Rai Plaintiffs' motion for attorneys' fees, costs, and pre-judgment interest, Kissane billed 38.1 hours at a rate of $427.50, and Dolan billed 19.3 hours at a rate of $517.50. (Dolan Decl. (Dkt. No. 115) Ex. 1) A paralegal billed the remaining 1.3 hours. Applying the 30% reduction to Kissane and Dolan's time, the attorneys' fee award will include 26.67 hours of Kissane's time, corresponding to $11,401.43, and 13.51 hours of Dolan's time, corresponding to $6,991.43. This results in a reduction of $8,058.14 to the proposed attorneys' fee award.

[12] The Rai Plaintiffs have not argued that Kissane and Dolan should have delegated a portion of the work to associates.

## III. COSTS

### A. Applicable Law

WB Imico is entitled to an award of costs under the fee-shifting provision in the Rai Plaintiffs' Purchase Agreement. Costs include "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 483 (S.D.N.Y. 1989) (quoting Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including "photocopying, travel, and telephone costs"); Anderson v. City of New York, 132 F. Supp. 2d 239, 245-47 (S.D.N.Y. 2001) (allowing recovery for service, filing, and photocopying expenses, witness fees, and computerized legal research costs). Recovery is not permitted for costs associated with routine office overhead. See Kuzma, 821 F.2d at 934 ("[N]onrecoverable routine office overhead . . . normally must be absorbed within the attorney's hourly rate.")

### B. Analysis

Here, WB Imico seeks a costs award of $17,158.54, reflecting court fees, filing fees, electronic legal research expenses, attorney travel expenses, and printing and binding fees. (Dolan Decl. (Dkt. No. 115) ¶ 28, Ex. 3) WB Imico has submitted a list of costs incurred, but has not supplied invoices or other back-up documentation. In opposing WB Imico's costs request, however, the Rai Plaintiffs have challenged only the filing fees and electronic legal research expenses. (Pltf. Opp. Br. (Dkt. No. 119) at 24)

As to the request for $3,285.00 in filing fees,[13] the Rai Plaintiffs complain that these "fees [were] incurred in all matters . . . [but] are charged in the entirety to the Rai Plaintiffs." (Id.) As discussed above, however, joint and several liability is appropriate here. Accordingly, this objection is overruled.

As to the request for $6,119.75 in electronic legal research expenses, the Rai Plaintiffs object to this amount as excessive and unreasonable. (See id.) The Second Circuit has "recognized that the costs of electronic legal research are compensable, . . . but only where the charges are not already accounted for in the attorney's hourly rate." Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 286 (E.D.N.Y. 2008) (citing Arbor Hill, 369 F.3d at 97-98). Courts have also "granted awards that included such costs where the invoices submitted in support of the request demonstrated that the costs were actually charged to the requesting party, even where they did not demonstrate the law firm's normal billing practices." Inter-Am. Dev. Bank v. Venti S.A., No. 15 Civ. 4063 (PAE), 2016 WL 642381, at *8 (S.D.N.Y. Feb. 17, 2016). Here, however, the Court has neither invoices nor records demonstrating defense counsel's billing practices. Accordingly, there is not an adequate basis to award costs for electronic legal research.

All of the remaining expenses are properly included in a costs award. See, e.g., Anderson, 132 F. Supp. 2d at 245-47. After deducting $6,119.75 for electronic legal research expenses, WB Imico is entitled to a costs award of $11,038.79.

[13] Although WB Imico has not explained the nature of the underlying filings, they appear to relate to appeals filed with the Second Circuit.

**CONCLUSION**

The Rai Plaintiffs are directed to pay WB Imico $415,252.11 in attorneys' fees and $11,038.79 in costs. The Clerk of the Court is directed to terminate the motion (Dkt. No. 113), enter judgment, and close this case.

Dated: New York, New York
March 31, 2017

SO ORDERED.

Paul G. Gardephe
United States District Judge